UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| YUEH-LAN WANG,<br>*by and through her attorney-in-fact*,<br>Winston Wen-Young Wong,<br><br>    Plaintiff,<br><br>    v.<br><br>NEW MIGHTY U.S. TRUST, *et al.*,<br><br>    Defendants. | Civil Action No. 10-1743 (JEB) |

### MEMORANDUM OPINION

In this case, Plaintiff Yueh-Lan Wang, a citizen and domiciliary of Taiwan, seeks to recover property allegedly transferred by her late husband Yung-Ching Wang (Y.C.) to Defendant New Mighty U.S. Trust (NM-US Trust) during the five years prior to his death. She contends that the Civil Code of Taiwan establishes her right as a surviving spouse to 50% of the marital estate, which includes distributions of property made during this five-year period, without her consent, and for the purpose of reducing her share. To that end, she has named as Defendants here the trust, a trustee, and a beneficiary of the trust. These Defendants have now moved to dismiss on numerous grounds. Because the Court finds that Plaintiff has not established subject matter jurisdiction, it will dismiss her First Amended Complaint without prejudice.

**I.    Factual Background**

According to the First Amended Complaint, which at this juncture the Court must credit, Yueh-Lan married Y.C., who was also a Taiwanese citizen, as teenagers in 1935. Compl., ¶ 10. Y.C. and Yueh-Lan never divorced and remained married until Y.C.'s death in 2008. Id., ¶¶ 10-

1

11. During this 72-year marriage, Y.C. accumulated a substantial fortune. See id., ¶ 12. As the founder of the Formosa Plastics Group (FPG), "one of Taiwan's biggest and most profitable manufacturing conglomerates," Y.C. was ranked by *Forbes* magazine as the 178th wealthiest person in the world — and the second wealthiest person in Taiwan — with an estimated net worth of up to $6.8 billion. Id.

But if Y.C. was a businessman first, he was a family man second. Although Yueh-Lan has been recognized as Y.C.'s only legal spouse by both the Taipei National Tax Administration and the Taiwan courts, Y.C. established three distinct "families" during his lifetime. See id., ¶¶ 27-30. Y.C. and Yueh-Lan, referred to by the parties as the "First Family," had no children. Id., ¶ 30. Y.C. did, however, "ha[ve] several children with his female companions, Wang Yang Chiao and P.C. Lee." Id. Y.C., Wang Yang Chiao (who is now deceased), and their five children constituted the "Second Family," while Y.C., P.C. Lee, and their four children made up the "Third Family." See id.

Defendant NM-US Trust was formed on or about May 5, 2005, "to hold certain of Y.C.'s assets, including stock he owned in FPG's U.S. companies." Id., ¶ 119. Defendant Clearbridge, LLC, a limited liability company organized under the law of, and primarily engaging in business in, the District of Columbia, is the trustee of NM-US Trust. Id., ¶ 16. Defendant New Mighty Foundation (NMF) is a beneficiary of the trust. See id., ¶¶ 15, 123. "[C]ertain charities, philanthropies and the grantors of Defendant NM-US Trust," three British Virgin Islands-based "holding companies through which Y.C. held stock in FPG's U.S. affiliates," are also beneficiaries of the trust. Id., ¶¶ 123-24.

Dr. Winston Wen-Young Wong, who is himself Y.C.'s son (despite the difference in spelling) and a member of the Second Family, brings the instant action on Yueh-Lan's behalf

"pursuant to a duly executed power of attorney," id., ¶ 13, in order to recover property allegedly transferred from Y.C. to NM-US Trust. She claims an interest under Taiwanese law in any property, such as that held in the NM-US Trust, conveyed by Y.C. during the last five years of his life, without her consent, and with the purpose of reducing her inheritance. See id., ¶¶ 3-6. In support, her First Amended Complaint identifies nine distinct causes of action stemming primarily from provisions of the Civil Code of Taiwan that she claims entitle her to recovery. See id. Defendants have now filed a Motion to Dismiss on several grounds.

## II.   Legal Standard

In evaluating Defendants' Motion to Dismiss, the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (internal citation omitted); see also Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005). This standard governs the Court's considerations of Defendants' Motion under both Rules 12(b)(1) and 12(b)(6). See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) ("in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader"); Walker v. Jones, 733 F.2d 923, 925-26 (D.C. Cir. 1984) (same). The Court need not accept as true, however, "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the Complaint. Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)) (internal quotation marks omitted).

To survive a motion to dismiss under Rule 12(b)(1), Plaintiff bears the burden of proving that the Court has subject matter jurisdiction to hear her claims. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); U.S. Ecology, Inc. v. U.S. Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000). A court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). For this reason, "'the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." Id. at 13-14 (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1987) (alteration in original)). Additionally, unlike with a motion to dismiss under Rule 12(b)(6), the Court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." Jerome Stevens, 402 F.3d at 1253; see also Venetian Casino Resort, L.L.C. v. E.E.O.C., 409 F.3d 359, 366 (D.C. Cir. 2005) ("given the present posture of this case — a dismissal under Rule 12(b)(1) on ripeness grounds — the court may consider materials outside the pleadings"); Herbert v. Nat'l Academy of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992).

**III.   Analysis**

Defendants move to dismiss Yueh-Lan's Complaint on myriad grounds. They argue, for example, that 1) Winston lacks standing to bring this action in Yueh-Lan's name because of defects under Taiwanese law in the power of attorney granted him, 2) the Court lacks subject matter jurisdiction, 3) NMF has not been properly served, 4) necessary parties have not been joined, and 5) Plaintiff's claims are legally deficient under Taiwanese and U.S. law. See Mot. at 3-4.

"Subject matter jurisdiction 'is, of necessity, the first issue for an Article III court,' for

4

'[t]he federal courts are courts of limited jurisdiction, and they lack the power to presume the existence of jurisdiction in order to dispose of a case on any other grounds.'" Loughlin v. United States, 393 F.3d 155, 170 (D.C. Cir. 2004) (quoting Tuck v. Pan Am. Health Org., 668 F.2d 546, 549 (D.C. Cir. 1981)); see also Am. Farm Bureau v. EPA, 121 F. Supp. 2d 84, 90 (D.D.C. 2000) ("The court cannot address any issue if it lacks subject matter jurisdiction . . . ."). The Court, therefore, will address this question first. Because it concludes that the citizenship of a trust — for purposes of deciding whether diversity jurisdiction exists — requires consideration of the citizenship of the trust's beneficiaries, the Court cannot determine on the face of the First Amended Complaint whether diversity exists here. As a result, it will dismiss the First Amended Complaint without prejudice.

### A. *Citizenship of Trust*

Diversity of citizenship is the only alleged source of subject matter jurisdiction in this case. See First Am. Compl., ¶¶ 21–22. Title 28 U.S.C. § 1332 endows district courts with "original jurisdiction of all civil actions where the matter in controversy exceeds . . . $75,000 . . . , and is between," *inter alia*, "citizens of a State and citizens or subjects of a foreign state." Given the billions of dollars at issue here, the Court has no doubt that the amount in controversy exceeds $75,000. See First Am. Compl., ¶ 22. The actual diversity of the parties, therefore, is the issue on which this case turns.

Article III of the Constitution "requires only minimal diversity, that is, diversity of citizenship between any two parties on opposite sides of an action, regardless of whether other parties may be co-citizens." Saadeh v. Farouki, 107 F.3d 52, 54 (D.C. Cir. 1997) (citing State Farm Fire & Casualty Co. v. Tashire*,* 386 U.S. 523, 530–31 (1967)). "Congress," however, "has never granted the district courts the full measure of diversity jurisdiction permitted by the

Constitution." Id. Title 28 U.S.C. § 1332, unlike Article III, requires "complete diversity." See id.; Prakash v. American Univ., 727 F.2d 1174, 1178 n.25 (D.C. Cir. 1984). Consequently, a case qualifies for diversity jurisdiction in the federal courts only if no two parties on opposite sides of an action are citizens of the same state. See Saadeh, 107 F.3d at 54; Prakash, 727 F.2d at 1178 n.25. This principle also extends to aliens: just as no two opposing litigants can be citizens of the same state, no two opposing litigants can both be aliens. See Saadeh, 107 F.3d at 55 (diversity statute does "not confer jurisdiction over a lawsuit involving an alien on one side, and an alien and a citizen on the other side").

      Plaintiff, an alien, maintains that this case satisfies the requirement of complete diversity because the named Defendants — NM-US Trust, NMF, and Clearbridge — are all domestic entities. See id., ¶ 21. As a result, an alien on one side and three U.S. entities on the other qualifies as diversity. That diversity exists between Plaintiff and Defendants NMF (a trust beneficiary) and Clearbridge (a trustee) is clear on the face of the Complaint and does not seem to be in dispute. Plaintiff has also pled that NM-US Trust is a "trust formed under the laws of the District of Columbia with [its] principal place of business located in the District of Columbia," id., ¶ 15, and that it is a citizen of "Virginia and/or the District of Columbia." Id., ¶ 21. Plaintiff's allegation that the trust is a citizen of "Virginia and/or the District of Columbia," however, appears to assume that the citizenship of the sole trustee — Clearbridge, a citizen of Virginia and D.C. — determines the citizenship of the trust. Indeed, she argues as much in her Opposition to the instant Motion. See Opp. at 9-13. Defendants, on the other hand, contend that the citizenship of a trust is determined with reference to both the trustees and the beneficiaries. See Mot. at 12-14. Because Plaintiff has failed to adequately plead the identities and citizenships

6

of all of the trust's beneficiaries, Defendants argue, the Court must dismiss for lack of subject matter jurisdiction.

The D.C. Circuit has not established a means of determining the citizenship of a trust for purposes of diversity jurisdiction. Nor does it appear that other district courts in this Circuit have addressed this issue. Although it is a close question on which federal courts appear to be divided, the Court finds that Supreme Court precedent and the well-considered decisions of other circuits support the conclusion that the citizenship of a trust's beneficiaries must be taken into account in determining the citizenship of a trust. In reaching this conclusion, the Court first examines the two Supreme Court cases that gave rise to the divergence in lower-court decisions on this issue: Navarro Savings Association v. Lee, 446 U.S. 458 (1980), and Carden v. Arkoma Associates, 494 U.S. 185 (1990). Finding that Carden governs, it then applies Carden's rule for determining the citizenship of artificial entities to trusts, considering the decisions of other lower courts along the way.

### B. Reconciling Navarro and Carden

In Navarro, a case decided by the Supreme Court in 1980, the individual trustees of a business trust brought an action for breach of contract in their own names. See 446 U.S. at 459-60. The plaintiffs, who were of diverse citizenship from the defendants, sought to access federal court under the auspices of diversity jurisdiction. See id. The defendants, however, contended that the trust beneficiaries — not the trustees — were the real parties in interest, and, therefore, the citizenship of the beneficiaries should control the diversity analysis. See id. at 462. The Court, accordingly, addressed the question of "whether the trustees of a business trust may invoke the diversity jurisdiction of the federal courts on the basis of their own citizenship, rather than that of the trust's beneficial shareholders." Id. at 458. Because the trustees "possesse[d]

certain customary powers to hold, manage, and dispose of assets for the benefit of others," including the authority "to sue and be sued in their capacity as trustees," the Court confirmed that they were "real part[ies] to the controversy for the purposes of diversity jurisdiction." Id. at 464. "[T]rustees who meet this standard," the Court concluded, may "sue in their own right, without regard to the citizenship of the trust beneficiaries." Id. at 465-66.

Although Navarro involved an action brought in the name of the trustees only, it could arguably be read to imply that when a trustee "possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others," id. at 464, a court should refer only to the citizenship of the trustee in order to determine the citizenship of a trust. "In the circumstances, it is not surprising that some courts of appeals, with citation to Navarro, have held that the 'citizenship of a trust is that of a trustee.'" Emerald Investors Trust v. Gaunt Parsippany Partners, 492 F.3d 192, 201 (3d Cir. 2007) (quoting Hicklin Eng'g, L.C. v. Bartell, 439 F.3d 346, 348 (7th Cir. 2006)) (citing Johnson v. Columbia Props. Anchorage, LP, 437 F.3d 894, 899 (9th Cir. 2006)); Indiana Gas Co. v. Home Ins. Co., 141 F.3d 314, 318 (7th Cir. 1998)); see also, e.g., Mullins v. TestAmerica Inc., 564 F.3d 386, 397 n.6 (5th Cir. 2009); Homfeld II, L.L.C. v. Comair Holdings, Inc., 53 Fed. Appx. 731, 732 (6th Cir. 2002).

What the courts relying on Navarro for the proposition that a trust's citizenship is that of its trustees appear to have missed, however, is the holding in Carden, a case the Supreme Court decided ten years after Navarro. In Carden, a limited partnership brought a contract claim in district court on the basis of diversity jurisdiction. 494 U.S. at 186. The partnership contended that, like corporations, its citizenship should be determined with reference to the state in which it was organized or, alternatively, with reference to the citizenship of its general partners only. See id. at 187-96. The Court disagreed, holding that "diversity jurisdiction in a suit by or against [an

8

artificial] entity depends on the citizenship of 'all the members.'" Id. at 195 (quoting Chapman v. Barney, 129 U.S. 677, 682 (1889)).

In so doing, the Court explicitly distinguished Navarro: "Navarro had nothing to do with the citizenship of the 'trust,'" it insisted, "since it was a suit by the trustees in their own names." Id. at 192-93. Carden emphasized that Navarro concerned the distinct question of whether the trustees in that action "were the real parties to the controversy." Id. at 191. The Court rejected, moreover, the dissenters' attempt to import the "real party to the controversy" test into "the quite different question of how the citizenship of [a] single artificial entity is to be determined." Id. at 188 n.1. In other words, Carden clarified that Navarro — in which the trustees, and not the trust, were the named parties — had established that trustees may in some circumstances be the real party in interest, but "had nothing to with" the distinct issue of a trust's citizenship.

Even after Carden, however, many courts have continued to rely on Navarro for the proposition that a trust bears the citizenship of its trustees. See, e.g., Hicklin, 439 F.3d at 348; Johnson, 437 F.3d at 899; Indiana Gas, 141 F.3d at 318; Mullins, 564 F.3d at 397 n.6; Homfeld II, 53 Fed. Appx. at 732. Carden, however, could not have been clearer with respect to Navarro. Although the Court's characterization of Navarro and its statement that the case "had nothing to do with the citizenship of the 'trust'" may have been *dicta*, see id. at 191-93, its reading of Navarro is persuasive. That trustees can in some circumstances be the real party to a controversy and bring actions in their own names on the basis of their own citizenship does not logically require that a trust takes on the citizenship of its trustees in a suit by or against the trust itself. Determining which parties before the court are the real parties and determining the citizenship of a given party, Carden makes clear, are distinct questions. See id. at 188 n.1, 191, 193. As the

9

trust itself is the named party in this case, it is the latter inquiry that concerns this Court here. It is to Carden's membership test, accordingly, that the Court must turn.

In bypassing Navarro in favor of Carden, the Court pauses to acknowledge that it joins a distinct minority of courts that have decided the question. But because almost all of those courts that have followed Navarro have done so in a single sentence and without even acknowledging Carden, this decision is actually consistent with the clear majority of courts to have considered Carden's impact on the trust-citizenship question. See, e.g., Emerald Investors, 492 F.3d at 199-206; Riley v. Merrill Lynch, Pierce, Fenner & Smith, 292 F.3d 1334, 1337-39 (11th Cir. 2002), overruled on other grounds by Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit, 547 U.S. 71, 89 (2006), as recognized in Instituto De Prevision Militar v. Merrill Lynch, 546 F.3d 1340, 1348 (11th Cir. 2008); San Juan Basin Royalty Trust v. Burlington Resources Oil & Gas, Co., L.P., 588 F. Supp. 2d 1274, 1276-80 (D.N.M. 2008); In re A.H. Robins Co., Inc., 197 B.R. 575, 577-79 (E.D. Va. 1995); 1963 Jackson, Inc. v. De Vos, 2010 WL 5093349, at *3-*4 (W.D. Tenn. 2010);  but see, e.g., General Retirement System of the City of Detroit v. UBS, 2010 WL 5296957, at *2-*4 (E.D. Mich. 2010). The many opinions disposing of the issue in cursory fashion do not outweigh the admittedly few, but far more thorough, opinions going the other way. In siding with the Third and Eleventh Circuits, then, this Court follows the weight of persuasive authority, if not the majority of courts of appeals.

        *C. Applying Carden's Membership Test*

Carden held that an "artificial entity" assumes the citizenship of all of its "members" for purposes of diversity jurisdiction. See id. at 195-96. Although the artificial entity at issue in that case was a limited partnership, not a trust, it seems clear that the Carden rule also applies to trusts. First, a trust, which is certainly not a natural person, is encompassed by the plain meaning

of the term "artificial entity."  Second, the Carden Court took great care to distinguish the two artificial entities to which this rule does not apply: the corporation and its Puerto Rican cousin, the *sociedad en comandita*.  See id. at 187-90.  "While the rule regarding the treatment of corporations as 'citizens' has become firmly established, [the Court] ha[s] (with an exception [(the *sociedad*)] . . . ) just as firmly resisted extending that treatment to other entities."  Id. at 189. Third, the Court's repeated discussion and differentiation of Navarro appears to assume that trusts are one of the artificial entities to which its rule extends.  See id. at 191-94.  Why else go to such lengths to distinguish it?

      Having determined that Carden's "member"-based test governs the citizenship of a trust, only the application of that test remains.  Recognizing that "historically the term 'members' has not been applied in the context of a trust," the Third Circuit in Emerald Investors identified four ways in which a trust's membership might be defined: 1) trustees only, 2) beneficiaries only, 3) a control-based test under which either trustees or beneficiaries might be the legally operative members, and 4) both trustees and beneficiaries.  See 492 F.3d at 201-03.  Seeing no plausible option beyond these four, this Court will follow the Third Circuit in choosing among these alternatives.

      The first, a trustees-only test, neither comports with the plain meaning of "member" nor with Carden itself.  As seemingly all courts that have applied Carden's membership test to trusts have agreed, a trust's members include its beneficiaries. See, e.g., Emerald Investors, 492 F.3d at 199-206; Riley, 292 F.3d at 1337-39; San Juan Basin, 588 F. Supp. 2d at 1280; A.H. Robins Co., 197 B.R. at 579; 1963 Jackson, 2010 WL 5093349, at *3.  "Because [beneficiaries] possess interests in the corpus of the [t]rust, they are undoubtedly 'members' of the Trust, much like the limited partners were 'members' of the limited partnership in Carden."  A.H. Robins Co., 197

B.R. at 579.  Indeed, the Carden Court rejected the contention that the citizenship of a limited partnership could be determined "solely by reference to the citizenship of its general partners," who, like trustees in the case of trusts, may "have exclusive and complete management and control of the operations of the partnership."  Carden, 494 U.S. at 192.  Considerations of control, it stated, "play[ ] no part" in determining the citizenship of artificial entities, and courts making diversity determinations, it cautioned, may not "consult the citizenship of less than all of the entity's members."  Id. at 195.  This logic extends to beneficiaries, "who may be in a position similar to that of the limited partners in a limited partnership."  Emerald Investors, 492 F.3d at 202.  That a trust's beneficiaries might lack control over its assets, accordingly, is no reason not to consider them members.

      Plaintiff, however, argues that even if beneficiaries are members of a trust, a trustee-only test should nevertheless be applied to trusts like NM-US Trust that have an open class of beneficiaries.  See Opp. at 12.  In such cases, she contends, "it is unclear who would be deemed a beneficiary of the trust" when additional beneficiaries might be named by the trustee at any time.  See id.  That concern, however, is mitigated by the fact that a party's citizenship for purposes of diversity is determined at the time a suit is filed.  See Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 571 (2004); Bush v. Butler, 521 F. Supp. 2d 63, 71 (D.D.C. 2007) ("Diversity of citizenship is assessed at the time the suit is filed.").  The Court, accordingly, sees no reason to create an exception for trusts with open classes of beneficiaries; a plaintiff need only identify those beneficiaries that exist at the time of filing. In addition, Plaintiff cites no authority in support of her broader argument that in applying Carden the Court should distinguish among different kinds of trusts.  Cf. Emerald Investors, 492 F.3d at 198 n.10 (declining to "conclude that the type of trust calls for a difference in treatment when determining a trust's citizenship");

Jackson, 2010 WL 5093349, at *4 ("distinction between gratuitous trusts and business trusts [is] a distinction without merit").

The third option proffered by the Third Circuit, a control-based test under which trustees or beneficiaries might be considered the relevant members depending on the level of control the trustees possess, is deficient for similar reasons. As previously stated, in rejecting the argument that a limited partnership's citizenship might be determined with reference to the general partners only, Carden expressly disowned the notion that conceptions of control should govern the citizenship analysis. In addition, such a rule would "place[ ] a great and unnecessary burden on both the litigants and the courts themselves." Emerald Investors, 492 F.3d at 203. Namely, "in each case where a trust is a party and the plaintiff relies on the court's diversity of citizenship jurisdiction, the court would have to monitor jurisdictional discovery . . . and make findings with respect to the roles of the trustee and beneficiary in the affairs of the trust, all in a case that might be dismissed . . . ." Id. Such functional, case-by-case tests for citizenship have regularly been rejected for their potential to create these obstacles. Cf. Kuntz v. Lamar Corp., 385 F.3d 1177, 1183 (9th Cir. 2004) ("[J]urisdictional rules should be as simple as possible, so that the time of litigants and judges is not wasted deciding where a case should be brought and so that fully litigated cases are not set at naught.").

The second and fourth alternatives, a beneficiaries-only test and a dual beneficiaries-trustees test, remain. Courts that have applied Carden appear to have split between these options. Compare, e.g., Riley, 292 F.3d at 1339 (beneficiaries only), and San Juan Basin, 588 F. Supp. 2d at 1280 (same), with Emerald Investors, 492 F.3d at 203-06 (both beneficiaries and trustees), and Jackson, 2010 WL 5093349, at *4 (same). Having concluded that the members of a trust include its beneficiaries, the Court need not now decide whether its trustees are also to be considered

members. Regardless of whether a trustee's citizenship is also relevant, a determination that beneficiaries' citizenships are necessary is sufficient to decide the matter at hand.

"[T]he party seeking the exercise of diversity jurisdiction bears the burden of pleading the citizenship of each and every party to the action." Loughlin v. United States, 393 F.3d 155, 171 (D.C. Cir. 2004) (citing Naartex Consulting Corp. v. Watt, 722 F.2d 779, 798 (D.C. Cir. 1983)). "Failure to plead such facts warrants dismissal of the action." Hewlett v. Lappin, 2010 WL 5124966, at * 1 (D.D.C. 2010) (citing Fed. R. Civ. P. 12(h)(3)). In order to survive the Motion to Dismiss, therefore, Plaintiff must have made sufficient allegations to establish the citizenship of the trust's beneficiaries. She has not done so. Although Plaintiff from one side of her mouth states that "NM Foundation is the only beneficiary of the NM-US Trust," First Am. Compl., ¶ 15, from the other she avers that "[t]he beneficiaries of Defendant NM-US Trust are certain charities, philanthropies and the grantors of Defendant NM-US Trust, including Defendant NM Foundation . . . ." Id., ¶ 123. Plaintiff's contention that the latter statement "was merely a reference to the fact that NM-US Trust's Declaration of Trust created that open class of beneficiaries," Opp. at 13, is unavailing. Paragraph 123 clearly states that the trust's beneficiaries include unnamed charities and philanthropies, in addition to the trust's grantors, see First Am. Compl., ¶ 123, which Plaintiff identifies as three British Virgin Islands-based holding companies. See id., ¶ 122. Crucially, however, she provides no information concerning the identities and citizenships of the "charities and philanthropies" or the citizenships of the holding-company grantors. Indeed, her pleadings suggest that at least some of these parties may be aliens, which would destroy diversity. On the basis of her First Amended Complaint, therefore, the Court cannot determine whether it has subject matter jurisdiction over her case.

To simply dismiss the case without prejudice, however, may well work an injustice upon Plaintiff if she remains in the dark about the identities and citizenship of the beneficiaries of the NM-US Trust.  She may not have sufficient information to determine if she can establish subject matter jurisdiction or not.  The Court, accordingly, will require Defendants to submit, within fourteen days of the docketing of this Opinion, a list of all beneficiaries and their citizenship to Plaintiff.  In addition, if other trustees besides Clearbridge exist, that information should also be disclosed in the same manner.  Armed with this data, Plaintiff may decide whether she is entitled to another foray in this Court.

### IV.     Conclusion

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss but order that they provide the aforementioned information to Plaintiff.  A separate Order consistent with this Opinion will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  January 27, 2012