# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

YUEH-LAN WANG,
*by and through her attorney-in-fact*,
Winston Wen-Young Wong,

        Plaintiff,

        v.

NEW MIGHTY U.S. TRUST,
NEW MIGHTY FOUNDATION, and
CLEARBRIDGE LLC,

        Defendants.

    )
    )
    )
    )
    )
    )
    )
    )
    )
    )
    )
    )
    )
    )
    )

**Civil Action No. 1:10-cv-01743-JEB**

**Oral Argument Requested**

---

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' OPPOSITION TO MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT AND FOR OTHER RELIEF

---

TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................1

BACKGROUND .....................................................................................................................5

    A.    Winston's Commencement of This Action and the Related DNJ Action ...............5

    B.    The Amended Complaints and the Motions to Dismiss the Amended
        Complaints ...............................................................................................................6

    C.    Yueh-Lan Dies And Further Proceedings Are Held in Abeyance ...........................6

    D.    Winston's Foreign Proceedings Alleging a Scheme to Misappropriate YC's
        Assets ......................................................................................................................7

        1.    The Hong Kong Actions .............................................................................7

        2.    The Bermuda Action ...................................................................................7

    E.    The Executors Move to Be Substituted Before the DC Circuit and the DNJ
        Court .......................................................................................................................8

    F.    The DNJ Court's Decision on Substitution .............................................................8

    G.    The DC Circuit's Decision on Substitution .............................................................9

    H.    The Present Motion For Leave to File the PSAC and for Other Relief .................10

ARGUMENT ........................................................................................................................12

I.    THE MOTION FOR SUBSTITUTION, RATIFICATION, AND RELATION
    BACK SHOULD BE DENIED ..................................................................................12

    A.    The Action is a Legal Nullity Because It Was Not Authorized By the
        Alleged POA ..........................................................................................................12

    B.    Rule 25(a)(1) Substitution Cannot Be Used Here .................................................15

    C.    Ratification or Amendment Cannot Cure a Legal Nullity .....................................15

        1.    Rule 17 and Rule 15 Cannot Be Used to Cure the Defective Filing .........15

        2.    Rule 17 Is Inapplicable .............................................................................16

        3.    The Executors' Reliance on Rule 15(c) is Misplaced ...............................18

        4.    Even if Rule 15(c)(1) Were Otherwise Applicable, the Executors
            Would Not Be Entitled to Relation Back ..................................................19

|   | D. | Winston Did Not Commence This Action As Yueh-Lan's "Next Friend" and Lacks "Third-Party Standing" | 21 |
| II. | | LEAVE TO AMEND SHOULD BE DENIED BECAUSE OF THE EXECUTORS' BAD FAITH | 21 |
| III. | | LEAVE TO AMEND WOULD BE FUTILE: THE PSAC FAILS TO STATE A CLAIM FOR RELIEF | 23 |
|   | A. | The PSAC Does Not Set Out Plausible Allegations Supporting the Claims Alleged | 24 |
|   | B. | The Taiwan Law Claims Should Be Dismissed | 26 |
|   | C. | The Supposed DC Law Counts Likewise Fail to State a Claim | 28 |
| IV. | | A DISMISSAL IS REQUIRED BECAUSE THERE ARE ABSENT NECESSARY AND REQUIRED PERSONS WHO CANNOT BE JOINED | 30 |
|   | A. | PC Lee Is Indispensable And Required to Be Joined | 31 |
|   | B. | The Grantors Are Indispensable And Required to Be Joined | 35 |
| V. | | THIS ACTION SHOULD BE DISMISSED BASED ON *FORUM NON CONVENIENS* | 37 |
| VI. | | ADDITIONAL GROUNDS FOR DISMISSAL AS TO NMF AND NM-US TRUST | 43 |
|   | A. | NMF Has Not Been Properly Served | 43 |
|   | B. | The PSAC Fails to State a Claim Against NMF | 44 |
|   | C. | The Executors Are Judicially Estopped from Suing NM-US Trust | 45 |
| CONCLUSION | | | 45 |

# TABLE OF AUTHORITIES

Page

## CASES

In re Adelphia Communications Corp. Securities & Derivative Litigation,
No. 03 MDL 1529(LMM), 2011 WL 6434009 (S.D.N.Y. Dec. 21, 2011) ......................17

Adelsberger v. United States,
58 Fed. Cl. 616 (2003) ......................................................................................................15

Advanced Magnetics v. Bayfront Partners, Inc.,
106 F.3d 11 (2d Cir. 1997) ...............................................................................................18

In re Air Crash Over Taiwan Straits on May 25, 2002,
331 F. Supp. 2d 1176 (C.D. Cal. 2004) ............................................................................38

Ali v. Carnegie Institution of Washington,
306 F.R.D. 20 (D.D.C.2014), aff'd, No. 1:13-cv-02030-RC, 2017 WL 1349280
(Fed. Cir. Apr. 12, 2017) ............................................................................................30, 31

American Wild Horse Preservation Campaign v. Salazar,
800 F. Supp. 2d 270 (D.D.C. 2011).............................................................................14, 16

Americold Realty Trust v. ConAgra Foods, Inc., 136 S. Ct. 1012 (2016) ......................................1

Arencibia v. 2401 Restaurant Corp.,
699 F. Supp. 2d 318 (D.D.C. 2010)...................................................................................24

*Ashcroft v. Iqbal,
556 U.S. 662 (2009)...........................................................................................................23

Associated Insurance Management Corp. v. Arkansas General Agency, Inc.,
149 F.3d 794 (8th Cir. 1998) .............................................................................................16

Banakus v. United Aircraft Corp.,
290 F. Supp. 259 (S.D.N.Y. 1968) ....................................................................................15

*Bell Atlantic Corp. v. Twombly,
550 U.S. 544 (2007)......................................................................................................23, 24

Berger v. Weinstein,
348 F. App'x 751 (3d Cir. 2009).......................................................................................14

BPA International. Inc. v. Kingdom of Sweden,
281 F. Supp. 2d 73 (D.D.C.2003)..........................................................................38, 39, 41

Brown v. Christman,
    126 F.2d 625 (DC Cir. 1942)..................................................................32

Cannon v. Tinkham,
    99 F.2d 133 (D.C. Cir. 1938)................................................................21

Cannon v. Wells Fargo Bank, N.A.,
    926 F.Supp 2d 152 (D.D.C. 2013)........................................................29

Capitol Medical Center, LLC v. Amerigroup Md., Inc.,
    677 F. Supp. 2d 188 (D.D.C. 2010).................................................30, 34

Chang v. Baxter Healthcare Corp.,
    599 F.3d 728 (7th Cir. 2010)................................................................40

In re Cherry,
    No. 12-00803, 2013 WL 1352294 (Bankr. D.D.C. Apr. 3, 2013)......................13

Clientron Corp. v. Devon IT, Inc.,
    35 F. Supp. 3d 665 (E.D. Pa. 2014).......................................................12

Cloverleaf Standardbred Owners Ass'n v. National Bank of Washington,
    699 F.2d 1274 (D.C. Cir. 1983)........................................................31, 35

Colston v. First Guaranty Commercial Mortgage Corp.,
    665 F. Supp. 2d 5 (D.D.C. 2009)..........................................................44

Compania Naviera Joanna SA v. Koninklijke Boskalis Westminster NV,
    569 F.3d 189 (4th Cir. 2009)...............................................................41

Cortlandt St. Recovery Corp. v. Hellas Telecomm., S.a.r.l.,
    790 F.3d 411 (2d Cir. 2015) ..........................................................13, 16

Cutler v. U.S. Department of Health & Human Services,
    797 F.3d 1173 (DC Cir. 2015), cert. denied, 136 S. Ct. 877 (2016) ................12

Davis v. United States,
    192 F.3d 951 (10th Cir. 1999) .............................................................33

*DeKalb County Pension Fund v. Transocean Ltd.,
    817 F.3d 393 (2d Cir),
    petition for cert. filed, No. 16-206 (U.S. Aug. 15, 2016). .....................13, 16, 21

In re Disaster at Riyadh Airport, Saudi Arabia, on August 19, 1980,
    540 F. Supp. 1141 (D.D.C. 1982)......................................................38, 39

District of Columbia v. Coleman,
    667 A.2d 811 (D.C. 1995).................................................................29

Donahue v. Far Eastern Air Transport Corp.,
    652 F.2d 1032 (D.C. Cir. 1981).................................................................38

Draisner v. Liss Realty Co.,
    228 F.2d 48 (D.C. Cir. 1955).....................................................................36

Duggan v. Keto,
    554 A.2d 1126 (D.C. 1989) ......................................................................30

Estate of Doe v. Iran,
    808 F. Supp. 2d 1 (D.D.C. 2011)..............................................................20

Estate of Raleigh v. Mitchell,
    947 A. 2d 464 (D.C. 2008) .......................................................................25

In re Estate of Reilly,
    933 A.2d 830 (D.C. 2007) ........................................................................30

Federal Treasury Enterprise Sojuzplodoimport v. SPI Spirits Ltd.,
    726 F.3d 62 (2d Cir. 2013) .......................................................................14

Felch v. Air Florida, Inc.,
    562 F. Supp. 383 (D.D.C. 1983)...............................................................29

Ficken v. AMR Corp.,
    578 F. Supp. 2d 134 (D.D.C. 2008)..........................................................13

Fleck v. Cablevision VII, Inc.,
    799 F. Supp. 187 (D.D.C. 1992)...............................................................20

*Foman v. Davis,
    371 U.S. 178 (1962)..................................................................................21

Fortuin v. Milhorat,
    683 F. Supp. 1 (D.D.C. 1988)..............................................................33, 36

Franklin v. Southern Railway Co.,
    523 F. Supp. 521 (D.D.C.1981)...........................................................37, 42

*Germain v. Teva Pharmaceuticals, USA, Inc.,
    756 F.3d 917 (6th Cir. 2014) ....................................................................24

Gilliand v. Koch Trucking, Inc.,
    No. JFM 11-3073, 2015 WL 2395148 (D. Md. May 19, 2015) .........................32

Gorman v. Ameritrade Holding Corp.,
    293 F.3d 506 (D.C. Cir. 2002)..................................................................43

Griffin v. D.C.,
    No. 93-2617(PLF), 1996 WL 294280 (D.D.C. May 29, 1996)........................................20

Grupo Dataflux v. Atlas Global Group, L.P.,
    541 U.S. 567 (2004)........................................................................................................36

*Harrow v. Prudential Insurance Co. of America,
    279 F.3d 244 (3d Cir. 2002) ..........................................................................................17

Haynes v. Navy Federal Credit Union,
    52 F. Supp. 3d 1 (D.D.C. 2014)......................................................................................30

International Association of Machinists National Pension Fund v. Estate of Dickey,
    808 F.2d 483 (6th Cir. 1987) ..........................................................................................15

Irwin v. World Wildlife Fund, Inc.,
    448 F. Supp. 2d 29 (D.D.C. 2006)..................................................................................42

JPMorgan Chase Bank v. Traffic Stream (BVI) Infrastructure Ltd.,
    536 U.S. 88 (2002)..........................................................................................................36

Kant v. Columbia University,
    No. 08 Civ. 7476(PGG), 2010 WL 807442 (S.D.N.Y. Mar. 9, 2010).............................23

Knieriem v. Group Health Plan, Inc.,
    434 F.3d 1058 (8th Cir. 2006) ........................................................................................30

*Lans v. Gateway 2000, Inc.,
    84 F. Supp. 2d 112 (D.D.C. 1999), aff'd sub nom. Lans v. Digital Equipment
    Corp., 252 F.3d 1320 (Fed. Cir. 2001) ...................................................................14, 21

*Leachman v. Beech Aircraft Corp.,
    694 F.2d 1301 (D.C. Cir. 1982)................................................................................19, 20

Lee Yu-Ge v. Johnson & Johnson,
    No. 3:10 OE 40034, 2001 WL 3566859 (N.D. Ohio Aug. 12, 2011)................................40

Lincoln Property Co. v. Roche,
    546 U.S. 81 (2005)..........................................................................................................14

Link Aviation, Inc. v. Downs,
    325 F.2d 613 (D.C. Cir. 1963) ..................................................................................16, 17

Mann v. Castiel,
    729 F. Supp. 2d 191 (D.D.C. 2010)................................................................................44

McMullen v. Synchrony Bank,
    164 F Supp. 3d 77 (D.D.C. 2016)....................................................................................29

*Meredith v. Ionian Trader,
    279 F.2d 471 (2d Cir. 1960) ....................................................................................13

Mizukami v. Buras,
    419 F.2d 1319 (5th Cir. 1969) .........................................................................13, 15

*Moletech Global Hong Kong Ltd. v. Pojery Trading Co.,
    No. 4:09-CV-00027-SBA, 2009 WL 3151147 (N.D. Cal. Sept. 25, 2009)...........38, 40, 43

Moore v. Sims,
    442 U.S. 415 (1979)............................................................................................43

Moses v. Howard University Hospital,
    606 F.3d 789 (D.C. Cir. 2010) ............................................................................45

National Coal Ass'n v. Clark,
    603 F. Supp. 668 (D.D.C. 1984) .........................................................................36

Nelson v. County of Allegheny,
    60 F.3d 1010 (3d Cir. 1995) ...............................................................................19

*Newman-Green, Inc. v. Alfonzo-Larrain,
    490 U.S. 826 (1989)............................................................................................34

News World Communications, Inc. v. Thompsen,
    878 A.2d 1218 (D.C. 2005) ................................................................................30

North American Catholic Education Programming Foundation, Inc. v. Womble,
    887 F. Supp. 2d 78 (D.D.C. 2012)......................................................................23

Ott v. Kaiser-Georgetown Community Health Plan, Inc.,
    689 F. Supp. 9 (D.D.C.1988) ........................................................................37, 42

Page v. Pension Benefit Guaranty Corp.,
    130 F.R.D. 510 (D.D.C. 1990) ...........................................................................19

*Piper Aircraft Co. v. Reyno,
    454 U.S. 235 (1981)....................................................................................37, 39, 41

Pitt v. Woodward and Lothrop,
    327 A.2d 816 (D.C. 1974) ..................................................................................42

Pressroom Unions–Printers League Income Security Fund v. Continental Assurance Co.,
    700 F.2d 889 (2d Cir. 1983) ...............................................................................14

Republic of Philippines v. Pimentel,
    553 U.S. 851 (2008)....................................................................................34, 35, 37

Rideau v. Keller Independent School District,
    819 F.3d 155 (5th Cir. 2016) .......................................................................18

Robinson v. District of Columbia,
    10 F. Supp. 3d 181 (D.D.C. 2014) ...............................................................45

Saadeh v. Farouki,
    107 F.3d 52 (D.C. Cir. 1997)........................................................................36

Sable Communications of California Inc. v. Pacific Telephone & Telegraph Co.,
    890 F.2d 184 (9th Cir. 1989) .......................................................................15

Schiavone v. Fortune,
    477 U.S. 21 (1986).......................................................................................19

Shaw v. District of Columbia,
    No. 05-1284 (CKK), 2006 WL 1371681 (D.D.C. May 15, 2006) ....................44

*Shu v. Wang,
    10-5302 (JMV), 2016 U.S. Dist. LEXIS 143222
    (D.N.J. Oct. 17, 2016)..........................................4, 9, 22, 32, 37, 38, 39, 42, 43

Sierra Club v. Whitman,
    285 F.3d 63 (D.C. Cir. 2002)........................................................................21

St. Pierre v. Norton,
    498 F. Supp. 2d 214 (D.D.C. 2007)..............................................................34

Stoppelman v. Owens,
    580 F. Supp. 944 (D.D.C. 1983)...................................................................20

Stromberg v. Marriot International., Inc. (Stromberg I),
    474 F. Supp. 2d 57 (D.D.C. 2007).............................................................37, 42

Stromberg v. Marriott International., Inc. (Stromberg II),
    256 F. App'x 359 (D.C. Cir. 2007) .............................................................37, 42

Stutsman v. Kaiser Foundation Health Plan of Mid-Atlantic States, Inc.,
    546 A.2d 367 (D.C. 1988) ............................................................................29

Summit Office Park, Inc. v. U.S. Steel Corp.,
    639 F.2d 1278 (5th Cir. 1981) ..................................................................15, 16

T.D. Williamson, Inc. v. Assoc. Eng'rs, India,
    13-0223-CVE, 2013 U.S. Dist. LEXIS 175730, *11 (N.D. Okla. Dec. 16, 2013)...........23

Toumazou v. Turkish Rep. of Northern Cyprus,
    71 F. Supp. 3d 7 (D.D.C. 2014).....................................................................45

Two Moms and a Toy, LLC v. Int'l Playthings, LLC,
    No. 10-02271-PAB, 2011 WL 5593178, *3 (D. Colo. Nov. 17, 2011)............................23

United States v. Annis,
    634 F.2d 1270 (10th Cir. 1980) ........................................................................36

United States v. Hall,
    214 F.3d 175 (D.C. Cir. 2000)..........................................................................21

*United States ex rel. Wulff v. CMA, Inc.,
    890 F.2d 1070 (9th Cir. 1989) ....................................................................14, 15

VFS US LLC v. Vaczilla Trucking LLC,
    No. 15-02226, 2015 WL 7281619 (E.D. La. Nov. 16, 2015)............................32

*Wach v. Byrne, Goldenberg & Hamilton, PLLC,
    910 F. Supp. 2d 164 (D.D.C. 2012)......................................................32, 33, 36

*Wang v. New Mighty U.S. Trust,
    843 F.3d 487 ((D.C. Cir. 2016),
    petition for cert. filed, No. 16-1089 (U.S. Mar. 9, 2017) ...........................1, 5, 9, 10, 22, 45

Warner Technology & Investment Corp. v. Hou,
    No. 13-741, 2014 WL 7409978 (D.N.J. Dec. 31, 2014) ....................................41

Weil v. Markowitz,
    898 F.2d 198 (D.C. Cir. 1990).........................................................................21

Whimsicality, Inc. v. Battat,
    27 F. Supp. 2d 456 (S.D.N.Y. 1998) ...............................................................22

*Whitehead v. CBS/Viacom, Inc.,
    221 F.R.D. 1 (D.D.C. 2004) ........................................................................43, 44

In re Whittington,
    530 B.R. 360 (Bankr. W.D. Tex. 2014)............................................................17

Wichita & Affiliated Tribes of Oklahoma v. Hodel,
    788 F.2d 765 (D.C. Cir. 1986) .........................................................................35

Williams v. GEICO Corp.,
    792 F. Supp. 2d 58 (D.D.C. 2011) ...................................................................44

Williams v. United States Postal Service,
    873 F.2d 1069 (7th Cir. 1989) ....................................................................13, 19

Winstead v. EMC Mortgage Corp.,
    697 F. Supp. 2d 1 (D.D.C. 2010).....................................................................24

*Zurich Insurance Co. v. Logitrans, Inc.,
   297 F.3d 528 (6th Cir. 2002) ......................................................................14, 16

## STATUTES

28 U.S.C. § 2072(b) ...........................................................................................14

DC Code § 13-334(a) ..........................................................................................43

DC Code § 20-341 ...............................................................................................42

## RULES

Federal Rule of Appellate Procedure 43(a)(1) ....................................................10

Federal Rule of Civil Procedure 4(e)(1) ..............................................................43

Federal Rule of Civil Procedure 4(h)(1)(A) .........................................................43

Federal Rule of Civil Procedure 12(b)(1) ..............................................................1

Federal Rule of Civil Procedure 12(b)(5) ..............................................................1

Federal Rule of Civil Procedure 12(b)(6) ...........................................1, 3, 23, 38

Federal Rule of Civil Procedure 12(b)(7) ....................................................1, 30

Federal Rule of Civil Procedure 15(a)(1) .............................................................18

Federal Rule of Civil Procedure 15(a)(2) ........................................................2, 18

Federal Rule of Civil Procedure 15(c) .................................................................19

Federal Rule of Civil Procedure 15(c)(1) ...............................................15, 18, 19

Federal Rule of Civil Procedure 17 .....................................................................16

Federal Rule of Civil Procedure 17(a) .................................................................17

Federal Rule of Civil Procedure 17(a)(3) ............................................2, 15, 16, 17, 18

Federal Rule of Civil Procedure 19(a) .................................................................33

Federal Rule of Civil Procedure 19(a)(1)(A)(i) ...................................................32

Federal Rule of Civil Procedure 19(a)(1)(B)(i) ..............................................34, 36

Federal Rule of Civil Procedure 19(a)(1)(B)(ii) .............................................34, 36

Federal Rule of Civil Procedure 19(b)(1) .......................................................31, 34

Federal Rule of Civil Procedure 19(b)(2) .......................................................................34

Federal Rule of Civil Procedure 19(b)(3) .......................................................................34

Federal Rule of Civil Procedure 25(a)(1) ...........................................................2, 8, 15

Federal Rule of Civil Procedure 82 ...............................................................................14

## OTHER AUTHORITIES

6A Charles A. Wight, Arthur R. Miller & Mary Kay Kane,
　　　　Federal Practice and Procedure § 1541 at 321 (2d ed. 1990). ..........................16

Defendants New Mighty U.S. Trust ("NM-US Trust"), New Mighty Foundation

("NMF"), and Clearbridge LLC ("Clearbridge") respectfully submit this Memorandum of Points

and Authorities in Opposition to the Motion of Chin-Teh Hsu, Tong-Schung Tai and Robert Shi

("Executors") For Leave to File a Second Amended Complaint and for Other Relief.  Defendants

renew their grounds for dismissal[1] under Federal Rule of Civil Procedure 12(b)(1), (5), (6) and

(7), and also submit that dismissal is warranted under the doctrine of *forum non conveniens*.[2]

### PRELIMINARY STATEMENT

The Executors' Motion should be denied for the following six reasons:  First, there is no

action into which the Executors can be substituted.  The alleged August 2, 2005, Taiwanese

Power of Attorney ("POA") purportedly from Yueh-Lan Wang ("Yueh-Lan"), as principal, to

Winston Wong ("Winston"), as mandatory, did not authorize Winston to commence this action

on Yueh-Lan's behalf.  As a consequence, the action is a legal nullity.  (See Point I.A.)  In an

effort to avoid this outcome, the Executors assert that the Court of Appeals ("DC Circuit")

already substituted them as plaintiffs in the action.  (See Proposed Second Amended Complaint

("PSAC") at ¶ 15)  This is wrong.  The DC Circuit limited substitution to the appeal and referred

all issues raised by Defendants before the DC Circuit to this Court for determination "in the first

instance."  Wang v. New Mighty U.S. Trust, 843 F.3d 487, 496 (D.C. Cir 2016), pet. for cert.

filed, No 16-1089 (U.S. Mar. 9, 2017).[3]  The Executors separately try to evade all POA issues by

---

[1]   At the February 3, 2017 conference, the Court directed Defendants to address all issues
relating to a dismissal of this action in their opposition to the Executors' motion instead of
filing a separate motion or cross-motion.  (Weinberger Decl. Ex. G at 18:16-20.)

[2]   Defendants are also submitting the accompanying declarations of: (1) Prof. Yeong-Chin Su,
Defendants' Taiwan law expert; (2) Pao Chu Lee; (3) Susan Wang; (4) William Wong; (5)
Donald D. Kozusko; and (6) Andrew Muscato.

[3]   The Petition for Certiorari asks whether the Supreme Court's decision in Americold Realty
Trust v. ConAgra Foods, Inc., 136 S. Ct. 1012 (2016), modified the jurisdictional inquiry for

advocating a misapplication of Rules 17(a)(3), 15(a)(2) and 25(a)(1), (Br. at 28-37), which do not permit "ratification" or relation back in the present circumstances. (See Point I.B and C.) [4]

Second, leave to file the PSAC should be denied because the Executors are not proceeding in good faith. Not only does the PSAC mischaracterize the effect of the DC Circuit's substitution decision, but the Executors also ignore their representations to the DC Circuit concerning NM-US Trust. Specifically, in arguing to the DC Circuit that NM-US Trust is a "traditional trust," the Executors told the DC Circuit that naming NM-US Trust as a defendant was a mistake. (Muscato Decl. Ex 6 at 12:1 (in "retrospect, sure, we wouldn't have sued the [NM-US Trust]. . . .")) Despite this, the PSAC continues to name NM-US Trust as a defendant and to seek relief against it on all claims. (See PSAC at 33.) Finally, under the guise of ratifying the existing action, the Executors, through the same counsel who filed the action and the Amended Complaint ("AC"), now propose a radical departure from the AC's allegations. Among other things, they seek to discard entirely the AC's sweeping allegations that (i) YC had no knowledge of NM-US Trust and that, accordingly, he did not approve any of the transfers to NM-US Trust, and (ii) if he did have knowledge of the transfers ("which is unlikely"), they were caused by the undue influence of Pao Chu Lee ("PC Lee") and other members of the "Third Family". Plainly, the Executors recognize that alleging YC had no knowledge of the transfers, or was unduly influenced when they occurred, sounds the death knell of their self-described "principal" claim under the Taiwan Civil Code ("Civil Code") Article 1030-3 (see Br. at 16), since the *sine qua non* of a claim under Article 1030-1 is that YC not only knew of the transfers

---

so-called "traditional trusts," thereby requiring at the jurisdictional stage in federal diversity litigation, a complicated, fact-intensive inquiry into the structure of a trust under state law.

[4]   The Executors alternatively argue that this action should be deemed *nunc pro tunc* to have been filed by Winston as Yueh-Lan's "next friend"; or that he "had third party standing" to sue on her behalf. (Br. at 39-41.) These arguments are also unavailing. (Point I.D. infra.)

but made them with the specific intent of reducing Yueh-Lan's spousal share.  Similarly, in an

obvious effort to circumvent Defendants' previous arguments that PC Lee is a necessary party,

the PSAC barely mentions her.  The PSAC also abandons the extensive allegations involving the

Bermuda Trusts, including those formed at about the same time as NM-US Trust.  (AC ¶¶ 88-

118.)  No explanation is provided for these radical changes beyond the purported fact that the

Executors are "new" to the action and should be allowed to frame the complaint the way they

wish.  But that is incorrect on at least three levels:  first, the Executors are represented by the

same counsel who made the prior lack of knowledge and conspiracy allegations on behalf of

Yuah-Lan; second, one of the Executors, Mr. Shu (also translated as Hsu), previously swore

(purportedly on Yueh-Lan's behalf) to a Hong Kong court that YC had no knowledge of the

trusts or the transfers to the trusts (see p. 7 below); and third there is no cogent explanation as to

what new facts have emerged to justify these wholesale changes.  (See Point II.)

   Third, leave should be denied because the PSAC would be subject to dismissal under

Rule 12(b)(6).  Having dropped the vast majority of the allegations of the AC, the remaining

allegations of the PSAC are mostly made "on information and belief" – a phrase utilized 46 times

– and otherwise set forth legal conclusions disguised as facts that are insufficient to state a claim.

Even the critical allegation as to the state of Yueh-Lan's knowledge of the alleged transfers and

her purported lack of consent to them is made on "information and belief."  (PSAC ¶ 54.)  The

PSAC fails to plausibly plead facts supporting the necessary elements of the Taiwan law claims

in Counts One through Five or the claims purportedly brought under District of Columbia

("DC") law (Counts Six through Nine).  And the self-described principal claim under Article

1030-3 is not plausible for the additional reason that it is directly contradicted by the allegations

of the AC.  The claims asserted under DC law are likewise subject to dismissal because they are dependent upon the viability of the Taiwan law claims.  (See Point III.)

Fourth, the PSAC fails to name indispensable parties required to be joined, but whose joinder is not feasible because diversity would be destroyed:  PC Lee, YC' s sole surviving wife, and the three British Virgin Island companies (the "Grantors") that allegedly transferred shares of Formosa Plastics Corporation, U.S.A. ("FPC USA") and Inteplast Corporation ("Inteplast") to NM-US Trust in order to reduce Yueh-Lan's spousal share.  (See Point IV.)

Fifth, this action is subject to dismissal under the doctrine of *forum non conveniens* ("FNC").  The related action filed by Winston on behalf of Yueh-Lan in the District Court of New Jersey (the "DNJ Action"), which alleged the exact same Taiwan law claims but against PC Lee, Susan Wang ("Susan") and Vanessa Wong ("Vanessa") (together, the "DNJ Defendants"), already has been dismissed on FNC grounds.  See Shu v. Wang, 10-5302 (JMV), 2016 U.S. Dist. LEXIS 143222 (D.N.J. Oct. 17, 2016).  The court there ("DNJ Court") made findings equally applicable here:  (1) that Taiwan provides an adequate alternative forum and any "judgment as to the Taiwan claims will likely" provide full relief, id. at *30; (2) that the case involved "foreign Plaintiffs with little connection to [the forum]" and, the evidence was "likely located throughout the world," id. at *38, *41; (3) the dispute "rests entirely on the application of Taiwan law," id. at *43; and (4) there was "no reason to burden [the forum's] citizens" where the "citizens of Taiwan likely have a strong interest in the distribution of the estate of one of its wealthiest citizens." Id. at *45-46.  Significantly, the Executors did not appeal that dismissal nor did they refile the action in Taiwan, where a Taiwan court then would have been able to adjudicate the myriad Taiwan law issues that permeate this action.  (See Point V.)

4

Sixth, the claims asserted as to both NM-US Trust and NMF should be dismissed in all events. As noted above, the DC Circuit's jurisdictional decision relied on the Executors' argument that NM-US Trust could neither sue or be sued. Wang, 843 F.3d at 495. Accordingly, the Executors are judicially estopped from suing NM-US Trust. (See Point VI.C.) As to NMF, (1) it was not properly served and (2) in any event, the only specific allegations regarding it are its receipt of cash distributions from NM-US Trust as directed by Clearbridge (PSAC ¶ 57), which do not give rise to a claim against NMF. (See Point VI.A and B.)

## BACKGROUND

**A.   Winston's Commencement of This Action and the Related DNJ Action**

This action and the related DNJ Action were commenced by Winston on Yueh-Lan's behalf based exclusively on the alleged POA.[5] The original Complaint named the three current Defendants and 20 "Doe Defendants" (the "Does"). (DE 1.) Service was not attempted on the named Defendants until February 9, 2011 (DE 3), just two days before the 120-day service limit expired. As explained below, service on NMF was defective and not timely cured. The allegations and claims in the related DNJ Action were identical but were asserted against PC Lee, Susan and Vanessa and 20 Does. (DNJ DE 1.) Defendants moved to dismiss the Complaint (DE 10) and the DNJ Defendants similarly moved in the DNJ Action (DNJ DE 14.) Among the grounds for dismissal asserted in each court were that the POA did not provide Winston with authority to commence the actions on Yueh-Lan's behalf.

---

[5]   Earlier, in May 2009, Winston had commenced another related action invoking the alleged POA in the Superior Court of New Jersey seeking appointment as an administrator for a "non-resident decedent" to administer unspecified alleged assets of YC that he claimed might have existed in New Jersey and around the world at the time of YC's death. That action was dismissed in 2011 by Order of the New Jersey Appellate Division. (Muscato Decl. Ex. 16.)

**B.**   **The Amended Complaints and the Motions to Dismiss the Amended Complaints**

In response to these dismissal motions, on May 27, 2011, Winston, continuing to act

exclusively under the alleged POA, filed Amended Complaints ("ACs") in this action (DE 15)

and the DNJ Action. (DNJ DE 18.) The almost verbatim ACs[6] centered upon the twin

allegations that: (1) Yueh-Lan was YC's sole lawful spouse and (2) PC Lee, an alleged "non-

spousal companion" had conspired (with Susan and Vanessa) to have marital assets allegedly

owned by YC transferred to NM-US Trust (and the Bermuda Trusts) for their own personal gain

either without YC's knowledge or as a result of PC Lee's undue influence. (ACs ¶¶ 65-70.)

On July 15, 2011, Defendants here moved to dismiss the AC on the basis that: (1)

Winston lacked authority under the POA to sue on Yueh-Lan's behalf; (2) complete diversity

was lacking; (3) service on NMF was insufficient; (4) required parties were absent and could not

be joined; and (5) the pleading failed to state a claim. (DE 17.) In a supplemental submission,

Defendants also reserved the right to move for dismissal on FNC grounds. (DE 23.) On January

27, 2012, this Court dismissed the action finding diversity jurisdiction had not been established.

(DE 24, 25.) The other grounds for dismissal were not reached and reconsideration of the

dismissal was later denied. (DE 29.)

The DNJ Defendants also moved to dismiss the virtually identical AC in the DNJ Action.

(DNJ DE 23.) That motion was fully briefed but remained unheard when Yueh-Lan died on July

1, 2012, as further discussed below.

**C.**   **Yueh-Lan Dies And Further Proceedings Are Held in Abeyance**

Winston appealed this Court's dismissal orders. (DE 30.) Yueh-Lan died before briefing

on the appeal (Case. No 12-7038; the "DC Appeal") had begun. Although her purported will

---

[6]   For the Court's convenience, Defendants have prepared a comparison of the two amended
complaints. (See Muscato Decl. Ex. 2.)

named Winston as "the sole legatee (*i.e.*, beneficiary)," it "did not name an executor." As a result, proceedings to appoint an executor ensued in Taiwan. (Br. at 3.) The DC Circuit stayed the appeal briefing and held the case in abeyance pending completion of those executor proceedings. (Id.) The DNJ Action was administratively dismissed pending resolution of the Taiwan executor proceedings. (DNJ DE 45.)

**D.    Winston's Foreign Proceedings Alleging a Scheme to Misappropriate YC's Assets**

  **1.    The Hong Kong Actions**

   In the meantime, in December 2011, Winston filed a Writ of Summons and Statement of Claim ("Writ") in Hong Kong (the "First HK Action"; Muscato Decl. Ex. 9), allegedly on behalf of YC's heirs. The First HK Action named 13 defendants, including Mr. Hung, Susan and Vanessa. The thrust of the allegations was that all of the "Offshore Trust Entities," including NM-US Trust, "were all wrongfully caused to be established by [Mr. Hung] in breach of trust and/or in breach of fiduciary duty without the knowledge, informed consent and/or proper authority of Mr. Y.C. Wang." (Id. ¶ 41.) The First HK Action lapsed without being served.

   In December 2012, Winston (joined by co-plaintiff (now co-movant) Mr. Shu on behalf of Yueh-Lan) issued a second Writ (the "Second HK Action"; id. Ex. 10) against the same 13 defendants and with virtually identical allegations verified by Winston and Mr. Shu, including that YC did not authorize the establishment of the Trusts or the property transfers to those trusts. (Id. ¶ 46.). The Second HK Action also lapsed without service. In June 2013, Winston alone issued a third Writ, which names just four of the original 13 defendants (the "Third HK Action"; id. Ex. 11). That action is presently stayed.

  **2.    The Bermuda Action**

   In April 2013, Winston filed a Statement of Claim in the Supreme Court of Bermuda, that was later amended in October 2013 (the "Bermuda Action"; Muscato Decl. Ex. 8). The

Amended Statement of Claim asserts claims against the trustees of the four Bermuda Trusts, the same trusts featured so prominently in the AC (AC ¶¶ 87-118), and a fifth defendant, Mr. Hung. Through the Bermuda Action, which remains pending, Winston seeks to annul or set aside all transfers made to the Bermuda Trusts for the benefit of all of YC's heirs on, among other grounds, the basis that YC never intended to transfer his alleged beneficial ownership interest in the assets now held by the Bermuda Trusts or that such transfers were the result of undue influence, this time by Mr. Hung rather than PC Lee. (Muscato Decl. Ex. 8 ¶¶ 30-38.)

**E.**     **The Executors Move to Be Substituted Before the DC Circuit and the DNJ Court**

Following their appointment, the Executors engaged Winston's attorneys, Gibbons P.C. and O'Reilly Stoutenburg Richards LLP, to pursue the related actions. Before the DC Circuit, the Executors moved to substitute under Federal Rule of Appellate Procedure 43(a)(1) (Br. at 4; the "DC Substitution Motion"). They filed a parallel substitution motion in the DNJ Action under Rule 25(a)(1). (DNJ DE 47.) Defendants opposed the DC Substitution Motion, asserting that because the POA did not authorize Winston to commence this action on Yueh-Lan's behalf, the action is a legal nullity into which the Executors cannot be substituted. (DC Appeal Doc. #1582613 at 7-20.) The motion panel deferred ruling on the issue and directed the parties to address it in their merits briefs (Br. at 4), where Defendants re-asserted their arguments. (DC Appeal Doc. # 1614194 at 41-55.). The DNJ Defendants opposed substitution on essentially the same grounds. (DNJ DE 52.)

**F.**     **The DNJ Court's Decision on Substitution**

On March 18, 2016, the DNJ Court permitted the Executors' substitution on a limited basis, stating:

> This order does not, and is not intended to, address defendants' arguments concerning an August 2005 power of attorney, Yueh-Lan Wang's competence when this matter was filed, and any other arguments concerning capacity to sue. (Id. 2 n.1.) Those matters are

more appropriately addressed in a pleading or motion other than that currently before the Court.   (DNJ DE 61 at 2, n.1.)

Despite this clear language, the Executors, in briefs later submitted on various matters, repeatedly (mis)represented that the court had "granted the Motion to Substitute *without reservation*," and it was "law of the case" thereby mooting the DNJ Defendants' arguments. (DNJ DE 93 at 30; DNJ DE 94-1 at 7-8.)  Subsequently, at oral argument, the DNJ Court expressed its "surprise" at those statements and excoriated Executors' counsel, stating:  "I didn't think the Court could be more clear as to the reservation the Court was making."   (Muscato Decl. Ex 7 at 5:18-20.)  The DNJ Court described the Executors' position as "not just wrong" but "so clearly erroneous that it borders on inane" (id. at 6:24-25), and stated it was vacating the prior substitution Order so that the Third Circuit would not have to "waste its time reviewing the voluminous record to find out that a representation was inaccurate."  (Id. at 7:17-18.)  In later granting the DNJ Defendants' motion to dismiss on FNC grounds, the DNJ Court further explained that:

> Because of [the Executors'] undoubtedly mistaken interpretation, which flew in the face of the Court's ruling, the Court vacated the Substitution Order during oral argument . . . The Court believes it is prudent to vacate the Substitution Order in part.  The Court does so to avoid an unjust result, namely the risk of foreclosing Defendants' opportunity to raise arguments regarding the validity and scope of the POA and Winston's capacity to sue.  Shu, 2016 U.S. Dist. LEXIS 143222 at *8.

## G.   The DC Circuit's Decision on Substitution

On December 9, 2016, the DC Circuit reversed this Court's subject matter jurisdiction dismissal.  As to the DC Substitution Motion, the DC Circuit noted that Defendants had "raise[d] a host of objections in response, primarily relating to the allegedly defective [POA] Winston exercised in bringing suit, which, in their view, should result in dismissal."  Wang, 843 F.3d at 496.  The DC Circuit expressly stated that it was not deciding those issues and directed that this Court "should consider the defendants' arguments in the first instance."  Id.  Like the DNJ

Action, substitution was granted "without prejudice to the defendants' ability to renew in district court those arguments they have pressed before [the DC Circuit]." Id. The DC Circuit also noted that its substitution decision was dependent upon the "acknowledgement [by the Executor's counsel, Mark Stoutenburg] at oral argument that defendants' arguments are unaffected by our grant of the Rule 43(a)(1) motion." Id. at 496 n. 22. This refers to the oral argument exchange between Judge Millett and Mr. Stoutenburg (Muscato Decl. Ex. 6 at 5:13-23), during which Mr. Stoutenburg represented:

> I mean, Your Honor, if you think the concern is that we're going to go back to the District Court and say hello, we were substituted before the Circuit Court under Rule 43, therefore all of your capacity arguments are wiped out, your nullity arguments are wiped out, I'm not making that argument. I am sure my adversaries will raise that argument again, as they have a number of times and will continue to make the argument. (Id. at 5:24-6:4.)

When Judge Millett sought further confirmation that "substitution doesn't change anything," Mr. Stoutenburg agreed, stating substitution was "for purposes of the appeal" and "other arguments are reserved for [Defendants] to make below. . . ." (Id. at 6:7-9:14; see also id. at 4:21-5:13).

## H.    The Present Motion For Leave to File the PSAC and for Other Relief

On March 20, 2017, the Executors filed the present motion for leave to file the PSAC and for other relief. While paying lip service to the fact that the DC Circuit granted the DC Substitution Motion without prejudice (Br. 5 and 42), the PSAC nonetheless alleges that the Executors "were substituted as plaintiffs in this action pursuant to the [December 9, 2016] decision and judgment of the Court [of Appeals]. . . Accordingly, pursuant to law, the Executors are the court-appointed and duly authorized representatives of Yueh-Lan and proper Plaintiffs in this action." (PSAC ¶ 15; emphasis added). That is incorrect: in granting the DC Substitution Motion, the DC Circuit did so under FRAP 43(a)(1) only for purposes of the appeal.

10

The Executors also say they wish to ratify the prior actions of their predecessor, Winston, but, at the same time, they "should have the opportunity to frame the case in the manner they deem appropriate" based upon "developments that warrant the filing of an updated and clarified pleading." (Br. at 8.)  In stark contrast to the ACs filed both in this Court and the DNJ Court, however, the PSAC no longer alleges that:

- YC "was not aware of the Trusts [including NM-US Trust] and did not authorize the formation and funding of the Trusts."  (AC ¶ 66).

- "[E]ven if YC was aware of the formation and funding of the Trusts, which is unlikely" then "he participated only because he was unduly influenced by [Pao Chu Lee; "PC Lee"], Susan and Vanessa.  Upon information and belief, P.C. Lee, Susan and Vanessa took advantage of a special relationship and influence they enjoyed with YC to ensure that they and other members of the Third Family would dominate and control the Trusts, to the total exclusion of the members of the Second Family."  (AC ¶ 69.)

Instead, the PSAC alleges that the transfers of FPC USA and Inteplast shares to the NM-US Trust were "directed," "caused" and/or "permitted" by YC (PSAC ¶¶ 51, 61) "in order to reduce Yueh-Lan's share of the Martial Estate."  (PSAC ¶ 62.)  In addition, the PSAC drops the many allegations of the AC concerning the Bermuda Trusts, including that the alleged transfers to those Bermuda Trusts infringed on Yueh-Lan's spousal share rights in the same manner as did the alleged transfers to NM-US Trust so that such transfers should be unwound and annulled. (See, e.g. AC ¶¶ 80-118; WHEREFORE Clauses (E)-(F).)  The PSAC refers to the Bermuda Trusts in just three paragraphs and states that the Executors "do not seek to invalidate the Bermuda Trusts, nor do they seek to recoup any assets that were transferred to the Bermuda Trusts."  (PSAC ¶ 65.)  No explanation is given for the Executors persistence in claiming that the alleged transfers to NM-US Trust violated Yueh-Lan's alleged spousal share rights, but the alleged transfers to the Bermuda Trusts did not, as previously alleged.  This is especially paradoxical because, in order to establish that the value of the Marital Estate was $9 billion

11

(PSAC ¶ 2), the Executors first will have to establish that the transfers to the Bermuda Trusts consisted of assets owned by YC that he acquired during his marriage to Yueh-Lan and that he transferred to the Bermuda Trusts with the specific intent to deprive Yueh-Lan of her proper spousal share.

## ARGUMENT

### I.   THE MOTION FOR SUBSTITUTION, RATIFICATION, AND RELATION BACK SHOULD BE DENIED

### A.   The Action is a Legal Nullity Because It Was Not Authorized By the Alleged POA

Winston filed the present action in October 2010, purportedly on Yueh-Lan's behalf, on the sole basis that he was her "attorney-in-fact" under the alleged POA. (Compl. ¶7; AC ¶ 13.) As a result, Winston's power and authority to commence this action is dependent exclusively upon the POA's validity, and if valid, the scope of authority it provided. The legal issues surrounding the POA are governed by the Taiwan statutes dealing with "contracts of mandates," as POAs are referred to under Taiwan law. See e.g., Clientron Corp. v. Devon IT, Inc., 35 F. Supp. 3d 665, 684 (E.D. Pa. 2014) (discussing how the laws of Taiwan, as a civil law country, should be interpreted).

The Executors must now assume Winston's burden of establishing that the action was properly commenced. See Cutler v. U.S. Dep't of Health & Human Servs., 797 F.3d 1173, 1179 (D.C. Cir. 2015), cert. denied, 136 S. Ct. 877 (2016) (party invoking federal jurisdiction bears the burden of showing the same). While the Executors, in a conclusory fashion, assert that Winston's POA "was valid" and "authorized him to commence this action on Yueh-Lan's behalf" (Br. at 37), Defendants' Taiwan law expert, Professor Su, explains the POA was not valid under Taiwan law and did not authorize Winston to commence this litigation. First, there are significant issues on the face of the alleged POA as to its due execution that a Taiwan court

would not resolve without a hearing. (Su Decl. ¶¶ 16-25.) <u>Second</u>, Taiwan law requires that a mandate expressly authorize the bringing of this litigation and no such authorization is contained in the alleged POA. (<u>Id.</u> ¶¶ 26-42.) <u>Third</u>, in all events, the alleged POA had lapsed before this lawsuit was filed because Yueh-Lan was incompetent. (<u>Id.</u> ¶¶ 43-59.)

Because Winston commenced this action without authority it is a nullity which should be dismissed. <u>Meredith v. Ionian Trader,</u> 279 F.2d 471, 473-474 (2d Cir. 1960) (the consequence of a suit being "initiated without authority from the party named as plaintiff" is that the action "is a nullity and any judgment obtained in such a suit is void."); <u>see also</u> <u>DeKalb Cty. Pension Fund v. Transocean Ltd.</u>, 817 F.3d 393, 412 n.121 (2d Cir.) <u>pet. for cert. filed</u> No. 16-206 (U.S. Aug. 15, 2016) ("DeKalb's lead-plaintiff motion cannot relate back to Bricklayers' complaint, because that complaint 'was a nullity.'") (citing <u>Cortlandt St. Recovery Corp. v. Hellas Telecomm., S.a.r.l</u>, 790 F.3d 411, 423 (2d Cir. 2015) ("[I]n the absence of a plaintiff with standing, this lawsuit was a nullity, and there was therefore no lawsuit pending for the real party in interest to 'ratify, join, or be substituted into' under Rule 17(a)(3) or otherwise.")). Consequently, no pending action exists that the Executors may now be substituted into, ratify or amend. <u>Williams v. U.S. Postal Serv.</u>, 873 F.2d 1069, 1072-73 (7th Cir. 1989) (denying relation back under Rule 15 when amendment would be futile in correcting the underlying defect); <u>Mizukami v. Buras</u>, 419 F.2d 1319, 1320 (5th Cir. 1969) (finding Rule 25 cannot cure a lack of capacity to sue or be sued); <u>In re Cherry</u>, No. 12-00803, 2013 WL 1352294, at *2 (Bankr. D.D.C. Apr. 3, 2013); <u>Ficken v. AMR Corp.</u>, 578 F. Supp. 2d 134, 140 & n.2 (D.D.C. 2008) (dismissing claim brought without authority and without establishing a valid power of attorney).

The basic jurisdictional defect that has infected this action from inception cannot be cured by any combination or application of the Federal Rules of Civil Procedure. Winston's

defect was not the result of a technical error in naming the real party in interest; instead, he

lacked the authority to bring this action for Yueh-Lan whom he has always alleged was the real

party in interest and at all times has been the named plaintiff.  See Berger v. Weinstein, 348 F.

App'x 751, 756 (3d Cir. 2009) ("We need not reach the argument of whether Berger is a real

party in interest because he has not established Article III standing."); see Lans v. Gateway 2000,

Inc., 84 F. Supp. 2d 112, 116-17 (D.D.C. 1999) ("[I]f a plaintiff lacks standing to be before the

court from the time of the filing of the original complaint, there is no action for him to amend,

since the court is deprived of subject matter jurisdiction over the entire matter."), aff'd sub nom

Lans v. Dig. Equip. Corp., 252 F.3d 1320 (Fed. Cir. 2001); Am. Wild Horse Pres. Campaign v.

Salazar, 800 F. Supp. 2d 270, 273 n.1 (D.D.C. 2011) ("While a plaintiff may amend a complaint

to add facts that show that jurisdiction exists, if there is no federal jurisdiction in a case, it may

not be created by amendment."); U.S. ex rel. Wulff v. CMA, Inc., 890 F.2d 1070, 1075 (9th Cir.

1989) ("Rule 17(a) does not apply to a situation where a party with no cause of action files a

lawsuit to toll the statute of limitations and later obtains a cause of action through assignment.").

The Executors' authority confirms this point.  See Fed. Treasury Enter. Sojuzplodoimport v. SPI

Spirits Ltd., 726 F.3d 62, 83 (2d Cir. 2013) ("plaintiffs cannot deploy Rule 17 to bypass the

[statute's] standing requirement").

  Contrary to the Executors' argument, procedural rules cannot enlarge the District Court's

jurisdiction or confer jurisdiction where none existed previously.  See Fed. R. Civ. P. 82; 28

U.S.C. § 2072(b) (rules of practice and procedure prescribed by the Supreme Court "shall not

abridge, enlarge or modify any substantive right"); Zurich Ins. Co. v. Logitrans, Inc., 297 F.3d

528, 531 (6th Cir. 2002); Pressroom Unions–Printers League Income Sec. Fund v. Cont'l

Assurance Co., 700 F.2d 889, 893 (2d Cir. 1983); see also Lincoln Prop. Co. v. Roche, 546 U.S.

14

81, 90 (2005).  Consequently, the Executors may not now rely on the Federal Rules to undo the nullity and provide standing.

**B.**     **Rule 25(a)(1) Substitution Cannot Be Used Here**

The consensus of authority is that substitution under Rule 25(a)(1) cannot be used to revive a proceeding that is a nullity from the outset.  See, e.g., Adelsberger v. U.S., 58 Fed. Cl. 616, 618-19 (2003) (Rule 25 could not be used to substitute a person when the suit was filed in the name of the plaintiff who died before the filing of the suit); Int'l Ass'n of Machinists Nat'l Pension Fund v. Estate of Dickey, 808 F.2d 483, 485 (6th Cir. 1987) (same); Mizukami, 419 F.2d at 1320 (finding Rule 25 could not be used to cure a lack of capacity to sue or be sued); Banakus v. United Aircraft Corp., 290 F. Supp. 259, 260 (S.D.N.Y. 1968) ("Since [plaintiff] was dead when the action for personal injuries was commenced, that action must be treated as a nullity and it cannot be given life by substituting parties and amending the complaint.").  Indeed, there is nothing for the Joint Executors to be substituted into. see Sable Commc'ns of Cal. Inc. v. Pac. Tel. & Tel. Co., 890 F.2d 184, 191 n.13 (9th Cir. 1989) ("Implicit in this interpretation [of analogous Rule 43(b)] is the precondition that the original party was a proper party to the suit.").

**C.**     **Ratification or Amendment Cannot Cure a Legal Nullity**

**1.**     **Rule 17 and Rule 15 Cannot Be Used to Cure the Defective Filing**

The Executors also suggest that this Court can remedy the defective filing of this action through ratification under Fed. R. Civ. P. 17(a)(3) or amendment under Fed. R. Civ. P. 15(c)(1). These contentions are unavailing.  As a threshold matter, neither Rule 17 nor Rule 15 can revive a nullity for the same reasons that Rule 25(a)(1) cannot.  CMA, Inc., 890 F.2d at 1075 ("B & K's assignment to the Wulffs of its claim against CMA cannot ratify the Wulffs' commencement of suit on a claim which theretofore did not exist."); Summit Office Park, Inc. v. U.S. Steel Corp., 639 F.2d 1278, 1284 (5th Cir. 1981) (refusing permission for proposed new plaintiffs to amend

the original complaint filed by the original party without jurisdiction.)  Neither Rule 17 nor 15

apply to cure an action commenced by a person without standing to sue.  Salazar, 800 F. Supp.

2d at 273 n.1 (jurisdiction "may not be created by amendment"); see also Zurich Ins., 297 F.3d at

531 ("[Rule 17(a)(3)] must be read with the limitation that a federal district court must, at a

minimum arguably have subject matter jurisdiction over the original claims."); Associated Ins.

Mgmt. Corp. v. Ark. Gen. Agency, Inc., 149 F.3d 794, 797 (8th Cir. 1998) (explaining that

ratification under Rule 17 cannot retroactively confer jurisdiction).

### 2.     Rule 17 Is Inapplicable

Rule 17 is inapplicable here to substitute for a deceased Yueh-Lan since the substitution

procedure provided in Rule 17(a)(3) is a mechanism to correct inadvertent mistakes in naming

the proper plaintiff, not to confer jurisdiction where none previously existed.  See Fed. R. Civ. P.

17, advisory comm. notes (1966 Amendment) ("It is intended to prevent forfeiture when

determination of the proper party to sue is difficult or when an understandable mistake has been

made.").  Where, as here, the real party in interest is the named plaintiff and some other defect

destroys jurisdiction, Rule 17(a)(3) is inapplicable.  See Summit, 639 F.2d at 1284; DeKalb, 817

F.3d at 412, 412 n.121 (citing Cortlandt, 790 F.3d at 423) (substitution and ratification under

Rule 17(a)(3) rejected where the action itself was a nullity).  Here, however, Yueh-Lan, has

always been the real party in interest as "the party who possess the substantive right being

asserted under the applicable law." 6A Charles A. Wight, Arthur R. Miller & Mary Kay Kane,

Federal Practice and Procedure § 1541 at 321 (2d ed. 1990).

The Executors' contention that their substitution under Rule 17 is supported by Link

Aviation, Inc. v. Downs, 325 F.2d 613 (D.C. Cir. 1963), is misplaced.  Unlike here, Link

Aviation involved a mistake in naming the correct plaintiff.  There, the insured plaintiffs filed a

negligence suit for damage to an airplane they owned.  However, before the lawsuit's filing,

16

plaintiffs' insurers succeeded by law as subrogees to the claim and "all rights and remedies of the original plaintiffs." Id. at 613.  The court allowed substitution of the insurers under Rule 17(a) to cure the mistake in not having named the proper plaintiffs since once subrogation occurred "'the action against the alleged wrongdoer to recover in tort must be maintained in the name of the insurers'" (citation omitted).  In the present case, there was no such mistake in alleging that any claims belong to Yueh-Lan, since she was always the real party in interest, and if the Executors succeed to them it is because of her death, not because of a mistake.  See In re Adelphia Commc'ns Corp. Sec. & Derivative Litig., No. 03 MDL 1529 (LMM), 2011 WL 6434009, at *4 (S.D.N.Y. Dec. 21, 2011) (no "understandable mistake" when plaintiff sued on behalf of persons who had not personally signed any power of attorney and plaintiff wrongly believed it had the authority under a power signed by a related company).

Even if, for the sake of argument, Rule 17(a)(3) were applicable here, there is no basis for a relation back as now claimed.  The Executors' assertions that they have *today* ratified the suit by (1) authorizing continuation of the suit, and (2) agreeing to be bound by the result (Br. at 34) are meaningless.  By attempting to step into Yueh-Lan's shoes, the Executors inherit this action "as is" with its deficiencies.  See Harrow v. Prudential Ins. Co. of Am., 279 F.3d 244, 248 n.7 (3d Cir. 2002) ("When an executor or administrator continues with a decedent's claim, she 'stands in the shoes of the decedent.'") (citation omitted).  Winston's failure to confirm his authority when commencing this action was unreasonable and unexplained.  Given this, by any measure, the Executors' present effort to ratify this action is untimely, unreasonably delayed, and ultimately ineffective.  The authorities cited by the Executors emphasize that relation back is applicable only when the real party in interest has timely ratified.  See In re Whittington, 530 B.R. 360, 393 (Bankr. W.D. Tex. 2014) ("Without an 'understandable mistake,' or if ratification

is unreasonably delayed, a court must dismiss the suit insofar as the real party in interest is absent."); Rideau v. Keller Ind. Sch. Dist., 819 F.3d 155, 165 (5th Cir. 2016) ("That unequivocal command indicates that ratification is mandatory when timely sought.").

The Executors also wrongly suggest that the equities weigh in favor of allowing ratification here.  The fact that the alleged POA did not authorize Winston to bring this action is not of Defendants' making.  His failure to obtain authority to bring the action after the defect was raised also is not of Defendants' making.  Indeed, Winston's own family members pointed out these same defects in the NJ State Court Action in 2009, and Winston did not cure them before filing suit in this Court.  (Muscato Decl. Ex. 15.)

### 3.    The Executors' Reliance on Rule 15(c) is Misplaced

The Executors cannot simultaneously seek to amend under Rule 15(c)(1) as if they *already* were parties to the action, while at the same time seeking to substitute or ratify the action as if they were *not* parties.  The Executors assert that "they are for all intents and purposes the exact same plaintiffs sharing the exact same interest" as Yueh-Lan, yet also technically, "new" plaintiffs.  (Br. at 31.)  As "new" plaintiffs looking to be substituted into this action, the Executors categorically cannot invoke Rule 15(c), which by its terms can only be invoked by a "party" to amend "its" own pleading.  See, e.g., Fed. R. Civ. P. 15(a)(1) ("A party may amend its pleading .. ."); Fed. R. Civ. P. 15(a)(2) ("[A] party may amend its pleading only with the opposing party's written consent or the court's leave.")  The Executors' own cited authority suggests that when faced with a request under Rule 15(c)(1) by an improperly named plaintiff as well as a "new" plaintiff, the court treats such a request as one for substitution under Rule 17(a)(3).  See Advanced Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11, 19-20 (2d Cir. 1997) ("Whether or not the amended complaint would relate back under Rule 15(c), however, we conclude that the court erred in limiting its focus to Rule 15.  The request to make the selling

18

shareholders the named plaintiffs on their own claims should have been considered in light of

Fed. R. Civ. P. 17. . . . [T]he motion to amend was in essence a motion for substitution of the

real parties in interest.")  Thus, the Executors' present motion to amend under 15(c) should be

denied.  Courts likewise have denied leave to amend under Rule 15(c) where amendment would

be futile in resolving the underlying defect of the action.  See Williams, 873 F.2d at 1072-73.

### 4.   Even if Rule 15(c)(1) Were Otherwise Applicable, the Executors Would Not Be Entitled to Relation Back

Even if the Executors could be substituted as plaintiffs and invoke Rule 15(c)(1), they

should not be permitted to advance admittedly stale claims and they do not otherwise meet the

requirements for a relation back.  The Executors recognize the statute of limitations on their

putative claims "have long since passed."  (Br. at 26.)  Consequently, even if an amendment

could be allowed, it should not relate back given the absence of a mistake and the resulting

prejudice to Defendants by allowing legally stale claims to proceed.  Rule 15(c)(1) should not be

employed here to deprive Defendants of their "interest in repose." Leachman v. Beech Aircraft

Corp., 694 F.2d 1301, 1309 (D.C. Cir 1982) (discussing the notice requirements for amendment

under Rule 15(a) and noting that "[e]ven if, as here, there were no showing of specific prejudice

in the sense of lost or destroyed evidence, defendants would still be deprived of their interest in

repose."). See Nelson v. County of Allegheny, 60 F.3d 1010, 1015 (3d Cir. 1995) (Rule 15(c)

will not apply to "save the claims of complainants who have sat on their rights").

The crux of the Rule 15(c)(1) analysis is the provision of "notice within the limitations

period" based on the conduct, transaction, or occurrence set out – or attempted to be set out – in

the original pleading. Page v. Pension Benefit Guar. Corp., 130 F.R.D. 510, 514 (D.D.C. 1990)

(quoting Schiavone v. Fortune, 477 U.S. 21, 29 (1986)).  Courts in this Circuit have adopted a

heightened notice requirement when an amendment seeks to add a plaintiff to the proceedings

19

after the limitations period has run.  See Leachman, 694 F.2d at 1309.  Such an amendment may

only relate back when there has been (1) "notice to the defendant of the conduct or occurrence

that gave rise to the claim" and (2) proof that "the defendant knew or should have known of the

existence and involvement of the new plaintiff."  Id.; see also Estate of Doe v. Iran, 808 F. Supp.

2d 1, 17 (D.D.C.2011); Griffin v. D.C., Civ. A. No. 93-2617(PLF), 1996 WL 294280, at *2

(D.D.C. May 29, 1996); Fleck v. Cablevision VII, Inc., 799 F. Supp. 187, 191 (D.D.C. 1992);

Page, 130 F.R.D. at 513 ("Page's argument is really another way of saying that where a new

plaintiff's claims arise from the same transaction or occurrence, and nothing more, relation back

should obtain.  Our Circuit Court has flatly rejected such a construction of Rule 15.") (citations

omitted).[7]  The Executors fail to meet these requirements.  In Stoppelman v. Owens, 580 F.

Supp. 944, 946 (D.D.C. 1983), this Court recognized that "[t]he addition of parties after the

statute of limitations has run is not significant when the amendment in 'no way alters the known

facts and issues on which the action is based.'"  See also Fleck, 799 F. Supp. at 192; Estate of

Doe, 808 F. Supp. at 17 (citing Stoppelman for "finding that the claims of new plaintiffs related

back to original complaint because the new complaint did not add any new claim.").

Contrary to the Executors' assertions, the PSAC significantly changes the operative facts,

legal theories, and even claims pled by Winston in the AC.  That the changes proposed from the

AC are substantial becomes readily apparent when its allegations are compared to those of the

PSAC.  (Defendants have prepared a redline comparison; Muscato Decl. Ex. 1.)  As noted

herein, the PSAC seeks to implement a wholesale removal or alteration of the facts, legal

theories and even claims central to the FAC, and thus, any amendment should not relate back.

---

[7]   The Joint Executors incorrectly restate this requirement in their brief—asserting that the
     second requirement is a *possible* requirement, i.e., an "and/or" requirement.  (Br. at 30.)

**D.    Winston Did Not Commence This Action As**
**Yueh-Lan's "Next Friend" and Lacks "Third-Party Standing"**

The Executors' request the action "be deemed to have [been] properly brought" by

Winston as Yueh-Lan's "next friend." (Br. at 39)  This new argument is devoid of merit.  The

prior pleadings allege only that Winston was acting as Yueh-Lan's "attorney-in-fact" under the

POA.  The other new argument that Winston "also had third party standing to bring this lawsuit"

(Br. at 41) is likewise wholly without merit.  The Executors fail to establish that Winston has

suffered any cognizable injury-in-fact.  In any event there would be no basis for allowing "next

friend" standing to relate back.  See Lans, 84 F. Supp. 2d. at 116-17, 120; DeKalb, 817 F.3d at

412; U.S. v. Hall, 214 F.3d 175, 177-78 (D.C. Cir. 2000) (reversing the district court's grant of

motion to extend *nunc pro tunc* on grounds that it lacked jurisdiction to do so); Cannon v.

Tinkham, 99 F.2d 133, 134 (D.C. Cir. 1938).  The cases cited by the Executors in support of

*nunc pro tunc* relief also lend no support.  Sierra Club v. Whitman, 285 F.3d 63, 67 (D.C. Cir.

2002), explicitly states that "'the power to amend . . . must not be confounded with the power to

create' and limits *nunc pro tunc* relief to situations in which a clerical error creates a defect in a

record that a *nunc pro tunc* order can relieve." (citation omitted);  Weil v. Markowitz, 898 F.2d

198, 201 (D.C. Cir. 1990) ("[n]unc pro tunc relief has been granted only in a limited number of

circumstances, where its entry is necessary to avoid, and does not create, an injustice at the hands

of the court itself.")

**II.    LEAVE TO AMEND SHOULD BE DENIED BECAUSE OF THE**
**EXECUTORS' BAD FAITH**

As the Executors recognize, leave to amend may be denied on various grounds, including

"bad faith."  Foman v. Davis, 371 U.S. 178, 182 (1962).  Here, the Executors are proceeding in

bad faith.  First, the Executors' continued pursuit of NM-US Trust as a defendant is directly

contrary to their successful appeal arguments that NM-US Trust could neither sue nor be sued

21

and, accordingly, had to be viewed as a "traditional trust" for jurisdictional purposes. Second, the PSAC alleges that the Executors were "substituted as Plaintiffs in this action pursuant to the decision and judgment" of the DC Circuit. (PSAC ¶ 15.) (Emphasis added). Not only is this refuted by the DC Circuit's decision, Wang, 843 F.3d at 496, but it is directly contrary to the representations Executors' counsel made to the DC Circuit that the Executors were seeking substitution for purposes of the appeal. See Whimsicality, Inc. v. Battat, 27 F. Supp. 2d 456, 465 (S.D.N.Y. 1998) (finding bad faith, in part, where plaintiff made representations about other court decisions that were "not only plainly inaccurate," but also made to "intentionally misrepresent [those holdings] to this Court").[8] Unfortunately, this is not the first time that court orders have been mischaracterized by these parties. Shu at 2016 U.S. Dist. LEXIS 143222 at *8.

Third, the PSAC constitutes an obvious attempt to avoid dismissal of the AC, which clearly fails to state a claim and fails to join indispensable parties who could not be joined. The Executors' assertion that they "should have the opportunity to frame the case in the manner they deem appropriate" based upon "developments that warrant the filing of an updated and clarified pleading" rings hollow and is implausible since they do not explain what those "developments" are beyond confirming the death of Yueh-Lan. (Br. at 8.) Certainly, they do not explain how that event suddenly led them, *and their counsel who filed the ACs before this Court and the DNJ Court*, to allege that YC not only knew of the Trusts but divested himself of his alleged beneficial ownership interest in the assets transferred to the Trusts in order to deprive Yueh-Lan of her purported spousal share. This gamesmanship is all the more egregious in light of the fact that Winston continues to allege in the Bermuda Action (and Mr. Shu previously alleged in the

---

[8]   The fact that the Executors include most of the language of the DC Circuit's decision in their brief, (Br. 5 and 42), does not alter the fact that they have mischaracterized the effect of the DC Circuit's decision, including through the allegations of the PSAC.

Second Hong Kong Action) that YC had no knowledge of the Trusts, including the NM-US

Trust, and did not approve of the alleged transfer of his alleged beneficial interest in assets

transferred to those Trusts.  (See Muscato Decl. Ex. 5 ).  Kant v. Columbia Univ., No. 08 CIV.

7476 (PGG), 2010 WL 807442, at *6-8 (S.D.N.Y. Mar. 9, 2010) (denying amendment where

proposed pleading "presents new facts and allegations so contradictory to [plaintiff's] earlier

pleading as to indicate bad faith . . .  particularly when the proposed amendments concern facts

clearly within the plaintiff's knowledge when the previous complaints were filed"); Two Moms

and a Toy, LLC v. Int'l Playthings, LLC, 10-02271-PAB, 2011 WL 5593178, *3 (D. Colo. Nov.

17, 2011) ("'Bad faith with regard to a Rule 15 motion can be inferred if the proposed

amendment directly contradicts allegations made in the original pleadings, such that the [two]

factual accounts cannot be reconciled.'" (citation omitted)).  The Executors simply cannot

pretend to be ratifying the action while simultaneously jettisoning its core narrative.  See N. Am.

Catholic Educ. Prog. v. Womble, 887 F. Supp. 2d 78, 85-86 (D.D.C. 2012); id. at 87 (denying

leave to amend on the eve of trial where, inter alia, the amendments "alter the factual

foundations for some claims" and were not "mere clarifications raising no new issues"); T.D.

Williamson, Inc. v. Assoc. Eng'rs, India, 13-0223-CVE, 2013 U.S. Dist. LEXIS 175730, *11

(N.D. Okla. Dec. 16, 2013) (finding bad faith, in part, where no discovery took place and

plaintiff "identified no new evidence that it ha[d] reviewed" between time of prior pleading and

amendment).

## III.    LEAVE TO AMEND WOULD BE FUTILE: THE PSAC FAILS TO STATE A CLAIM FOR RELIEF

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft

v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570

(2007) (allegations in a complaint in which "[p]laintiffs allege upon information and belief that [the Defendants] have entered into a contract, combination or conspiracy" found insufficient). The plausibility standard is met only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556); Winstead v. EMC Mortg. Corp., 697 F. Supp. 2d 1, 3 (D.D.C. 2010) And enough facts must be set forth so as to "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Importantly, a "formulaic recitation of the elements of a cause of action" is not sufficient. Id. "Information and belief" allegations do not meet this plausibility standard because "[t]he mere fact that someone believes something to be true does not create a plausible inference that is it true." Germain v. Teva Pharm., USA, Inc., 756 F.3d 917, 931 (6th Cir. 2014); see Arencibia v. 2401 Rest. Corp., 699 F. Supp. 2d 318, 325 (D.D.C. 2010). The PSAC does not meet this pleading standard. Each of the PSAC's claims fails based on "information and belief" pleading and the failure to set forth well-pleaded facts supporting the elements of each claim asserted.

## A.     The PSAC Does Not Set Out Plausible Allegations Supporting the Claims Alleged

The PSAC's central allegation is that Yueh-Lan is the "sole lawful spouse" of YC. Secondary premises are that, as such, Yueh-Lan was "shorted" in her share of marital property on YC's death; YC held a "beneficial" ownership of the FPC-USA and Inteplast shares transferred by the Grantors to NM-US Trust; and YC permitted the transfers to NM-US Trust in order to reduce Yueh-Lan's alleged spousal share. All of these premises are based on mere conclusions disguised as facts. The AC bases the central allegation on two supposed facts: a decision by the Taipei District Court (AC ¶ 29) and an opinion letter from the Taiwan tax authority stating only one spousal deduction would be allowed (id. ¶ 27, 85). Both "facts" have been deleted and no new facts are pleaded to support the allegation that Yueh-Lan was YC's "only legal spouse."

24

(PSAC ¶ 12.)  This is hardly surprising given that the Taiwan High Court has ruled that PC Lee

was a wife of YC and is his sole surviving spouse.  (PC Lee Decl. Ex. A; Muscato Decl. Ex. 3.)

The PSAC alleges that, as the alleged sole lawful spouse, there is a "shortness" in Yueh-Lan's

share of marital property (PSAC ¶ 80) and that the "value of the property in the Marital Estate is

presently known to be greater than double the value of the property paid to Yueh-Lan from

Y.C.'s Taiwan Assets."  (PSAC ¶ 79.)  No facts are pleaded to support these allegations.

Moreover, the AC made a series of allegations concerning the "Tax Settlement Agreement" (AC

¶¶ 149-153) but those too have been dropped.  As explained by Prof. Su, the Settlement

Agreement bars the spousal share claim advanced here.  (Su Decl. ¶¶ 150-51.)  The PSAC

alleges that YC was the beneficial owner of the Grantors and ostensibly shares of FPC-USA and

Inteplast held by the Grantors based solely on "information and belief pleading."  (PSAC ¶¶ 39-

46, 51, 52.)  However, no facts are pled to support these conclusory allegations and the basis on

which YC at any relevant time held the "beneficial" interests alleged.  Moreover, it is not

specified what law is claimed to apply to determine this alleged beneficial ownership.  See e.g.,

Estate of Raleigh, v. Mitchell, 947 A. 2d 464 (D.C. 2008) (rejecting claim that shareholder

owned corporate property titled in corporation's name).  The PSAC drops the allegations that

transfers were made to the NM-US Trust as the result of undue influence exerted through a

conspiracy led by PC Lee. (AC ¶¶ 55, 56, Count Nine.)  Now the PSAC makes the diametrically

opposite allegation that "Upon information and belief, Y.C. directed and/or permitted these

transfers to Defendant New Mighty U.S. Trust, with the assistance and/or at the request of

others." (PSAC ¶ 51.)  But this amounts to nothing more than a rote recitation of some of the

elements of an Article 1030-3 claim and is plainly insufficient to state a claim, as explained

below.

**B.**     **The Taiwan Law Claims Should Be Dismissed**[9]

**Count One (Article 1030-1)** (Su Decl. ¶¶ 85-88.)  A claim under Article 1030-1 that a spouse did not receive her full spousal share of marital property at the termination of the statutory marital property regime lies only against a disposing spouse (or his heirs if the disposing spouse is deceased).  (Su Decl. ¶ 87.)  Article 1030-1 does not give rise to a claim against these Defendants who are third parties to the marital relationship.  (Id.)  Prof. Chen does not contend otherwise.  Accordingly, Count One should be dismissed.

**Count Two (Article 1030-3)**.  (Su Decl. ¶¶ 89-114.)  The PSAC does not plead facts to support the elements of an Article 1030-3 claim.  First, the PSAC is bereft of any factual allegations of motive that are required to support a plausible inference that YC transferred marital property during the relevant 5-year period with the specific intent of reducing Yueh-Lan's share of marital property.  (Id. ¶¶ 97-101.)  (See PSAC ¶¶ 51-52, 61-62 (alleging only that YC "directed," "caused" and/or "permitted" transfers that were "intended to reduce Yueh-Lan's share of the Marital Estate" or transfers were "made in order to reduce Yueh-Lan's share").  Second, the PSAC lacks allegations that the alleged transfers were not gifts for performing a moral obligation beyond the conclusory statement that the "distributions were not 'proper gifts for performing a moral obligation.'"  (Id. ¶ 106 (citing PSAC ¶ 77).)  Third, a prerequisite to an Article 1030-3 claim is that the complaining spouse allege and establish the full amount of the spousal share subject to claim, the amount of the shortfall claimed, and that the disposing spouse could not satisfy this amount from other existing assets.  However, the PSAC does not allege that Yueh-Lan first sought to have her alleged "shorted spousal share" paid from YC's existing assets at the time of his death.  (Id. ¶ 109.)  To the contrary, under the "Tax Settlement Agreement"

---

[9]     The Court is respectfully referred to Prof. Su's Declaration for a fuller exposition regarding the Taiwan law claims.  (See Shu Declaration ¶¶ 81 to 148.)

substantial assets were distributed to YC's other two wives and heirs without any objection being made by Yueh-Lan or on her behalf.  (Id. ¶¶ 110-111.)  Finally, as to NMF, the only allegation is that NMF received transfers from NM-US Trust.  (PSAC ¶ 57.)  This does not state a claim under Article 1030-3 since, among other things, the PSAC contains no allegations, nor could it, that YC made the transfers, directly or indirectly.  (Su Decl. ¶ 113.)

**Count Three (Article 1146)**.  (Su Decl. ¶¶ 115-125.)  A claim under Article 1146 can be brought only when (a) someone's status as an heir has been challenged or (b) someone alleges himself to be an heir, which allegation is challenged by the heirs.  (Su Decl. ¶ 116.)  The PSAC contains no allegations that these Defendants either claim to be heirs of YC or that they have challenged Yueh-Lan's status as an heir.  To the contrary, by acknowledging that Yueh-Lan was *a* spouse of YC (just not the sole spouse), Defendants acknowledge that Yueh-Lan was an heir. (Id. ¶¶ 119-25.)  Accordingly, Count Three should be dismissed.

**Count Four (Article 767)**.  (See Su Decl. ¶¶ 126-34.)  Article 767 only permits the present legal owner of "a thing" to demand its return.  The PSAC does not allege – nor could it – that Yueh-Lan was the present legal owner of the disputed assets at the time the Complaint was filed and that, as the present legal owner, she was demanding their immediate return.  (Id. ¶¶ 129, 133.)  To the contrary, Yueh-Lan (originally through Winston and now through her Executors) claims that she was shorted of her proper spousal share such that these Defendants must restitute the shortness of share.  Such a claim is not cognizable under Article 767.  (Id. ¶¶ 129-33.)  Moreover, the PSAC's allegations that YC transferred his beneficial ownership of the disputed assets to the NM-US Trust defeats an Article 767 claim because these allegations signify he was not the legal owner of the disputed assets at the time the Complaint was filed either.  (Id. ¶ 129.)  Finally, to the extent the PSAC alleges YC retained his alleged beneficial

ownership interest in the FPC USA and Inteplast shares (the antithesis of the Article 1030-3 claim), then any claim under Article 767 would need to seek the return of estate property to "all the heirs," not to Yueh-Lan alone.  (Id. ¶ 131.)  Finally, the claim that, as "an heir," Yueh-Lan "became an owner of her portion of the Marital Estate" (PSAC ¶ 90) is not a claim to be the legal owner of a "thing" capable of being restored under Article 767.  (Su Decl. ¶ 132.)  Accordingly, Count Four should be dismissed.

**Count Five (Article 179)**  (See Su Decl. ¶¶ 135-46.)  The PSAC alleges that YC (not Yueh-Lan) had a beneficial ownership interest in the FPC USA and Inteplast shares; thus, as Prof. Su explains, YC is the only person who had the right to assert a claim under Article 179. (Id. ¶ 140.)  Such a claim does not belong to Yueh-Lan alone, but rather it would belong to YC's heirs collectively and could only be brought with the consent of all of YC's heirs and must seek the return of such estate property to all heirs.  (Id. ¶¶ 140-41.)  Additionally, YC's heirs would succeed to an Article 179 claim only if YC had such a claim (asserted or not) against Defendants at the time of his death (Id. ¶ 142); however, that is not alleged here.  Accordingly, Count Five should be dismissed.

## C.   **The Supposed DC Law Counts Likewise Fail to State a Claim**

The remaining claims in Counts Six through Nine are all dependent upon of the defective Taiwan law claims and, accordingly, they also fail.  These claims are either duplicative, as being subsumed by the provisions of the Taiwan Civil Code asserted, or seek relief which is not allowed under Taiwan law.  (Su Decl. ¶¶ 174-78.)  The Executors seek to avoid this result with the conclusory and incorrect assertion that these claims are "well plead" under DC law.  (Br. at 19.)  This is wrong for two reasons.  First, it overlooks that under choice-of-law principles, which as this Court has noted employs a "'constructive blending of the governmental interests'" analysis and the "most significant relationship" test, McMullen v. Synchrony Bank, 164 F Supp.

3d 77, 87 (D.D.C. 2016) (citation omitted), Taiwan law governs the claims.  Under this

approach, the Court evaluates the underlying governmental policies to "determine which

jurisdiction's policy would be more advanced by the application of its law to the facts of the case

under review" and also considers the factors of the Restatement (Second) of Conflict of Laws §

145 (i) place of the injury; (ii) place of the injury-causing conduct; (iii) the domicile, residence,

nationality, place of incorporation and place of business of the parties; and (iv) place where the

relationship is centered), to help identify the forum "with the most significant relationship to the

dispute." Dist. of Columbia v. Coleman, 667 A.2d 811, 816 (D.C. 1995).  Taiwan has the most

significant interest "in regulating the legal rights of married couples" domiciled there. Stutsman

v. Kaiser Found. Health Plan of Mid-Atl. States, Inc., 546 A.2d 367, 373-76 (DC 1988); see also

Felch v. Air Florida, Inc., 562 F. Supp. 383 (D.D.C.1983).  Further, any alleged injury occurred

in Taiwan, where Yueh-Lan purportedly was denied certain marital rights.

      Second, even if DC law applied, Counts Six through Nine fail to state a claim for relief.

The conversion claim (Count Six) fails because the Executors do not allege that "Defendants

exercised unlawful control over [Yueh-Lan's] personal property" "in denial or repudiation of

[her] rights thereto." Cannon v. Wells Fargo Bank, N.A., 926 F.Supp 2d 152, 176 (D.D.C.2013)

(citation omitted).  Rather, they allege that the disputed property was owned by others (namely,

YC or the Grantors) before being transferred to NM-US Trust.  The unjust enrichment claim

(Count Seven) fails because the PSAC contains no allegations that Defendants are retaining any

benefit conferred on them by Yueh-Lan or any property owned by Yueh-Lan.  An unjust

enrichment claim requires allegations that "(1) the plaintiff conferred a benefit on the defendant;

(2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of

the benefit is unjust." News World Commc'ns, Inc. v. Thompsen, 878 A.2d 1218, 1222 (DC

2005).  The constructive trust claim (Count Eight) fails because a constructive trust is

"fundamentally a remedy to prevent unjust enrichment."  Duggan v. Keto, 554 A.2d 1126, 1134

(D.C. 1989);  In re Estate of Reilly, 933 A.2d 830, 837 (DC 2007).  In light of the defective

claims for conversion and unjust enrichment, there is no basis for imposing a constructive trust.

See Knieriem v. Grp. Health Plan, Inc., 434 F.3d 1058, 1064 (8th Cir. 2006).  The accounting

claim (Count Nine), for which no case support is cited, fails because a fiduciary or trust

relationship between Yueh-Lan and Defendants is lacking.  See Haynes v. Navy Federal Credit

Union, 52 F.Supp 3d 1, 10 (D.D.C.2014) (constructive trust "is a remedy premised on a breach

of fiduciary duty or contract that Plaintiff does not establish").

## IV.  A DISMISSAL IS REQUIRED BECAUSE THERE ARE ABSENT NECESSARY AND REQUIRED PERSONS WHO CANNOT BE JOINED

Under Rule 19, each of (i) PC Lee and (ii) Creative II Holding, Inc., Creative II

Corporation, Inc., Sound International Investment Corporation (collectively, the "Grantors") are

absent persons who "must to be joined," but whose joinder is not feasible without destroying

diversity.  And because it would be inequitable to proceed without any one of them, the PSAC

would not withstand a Rule 12(b)(7) dismissal motion.

Rule 19 requires "'a two-step procedure for determining whether an action must be

dismissed because of the absence of a party needed for a just adjudication.'"  Capitol Med. Ctr.,

LLC v. Amerigroup Md., Inc., 677 F. Supp. 2d 188, 191-92 (D.D.C.2010) (citation omitted).

The party seeking dismissal must "'show the nature of the interest possessed by an absent party

and that the protection of that interest will be impaired by the absence.'"  Ali v. Carnegie Inst. of

Wash., 306 F.R.D. 20, 25 (D.D.C.2014) (citation omitted).  The Court's analysis considers the

allegations as pleaded and "matters outside the pleadings."  Id.  Under the first step, an absentee

is "required" and must be joined, if:

> (A) in that person's absence the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

But joinder is not feasible if diversity jurisdiction would be destroyed.  See Cloverleaf

Standardbred Owners Ass'n v. Nat'l Bank of Wash., 699 F.2d 1274, 1275-76, 1280 (D.C. Cir.

1983).  When joinder is not feasible, the Court must then "determine whether, in equity and good

conscience, the action should proceed among the existing parties or should be dismissed."  Rule

19(b).  Under Rule 19(b) the court considers:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;  (2) the extent to which any prejudice could be lessened or avoided by:  (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

In deciding whether to dismiss, the Court has "substantial discretion" in considering which

factors "to weigh and how heavily to emphasize certain considerations."  Cloverleaf, 699 F.2d at

1277.

## A.     PC Lee Is Indispensable And Required to Be Joined

PC Lee's absence requires dismissal under Rule 19.  The PSAC is premised on the

(erroneous) assertion that Yueh-Lan was YC's sole lawful spouse and is thus entitled to the entire

spousal share.  (PSAC ¶¶ 2-3, 25).  But PC Lee asserts she also is a lawful spouse of YC who

made significant contributions to their marriage and disputes the allegation in ¶ 27 of PSAC that

she is not "entitled to any portion of Y.C.'s estate." (Muscato Decl. Ex. 3 ¶¶ 8, 17-23.)  That PC

Lee is a spouse, has also been confirmed by a ruling of the High Court of Taiwan (Muscato Decl.

Ex. 3, Ex. A thereto) and acknowledged by Yueh-Lan (and Winston) in the prior Settlement

Agreement.  (Muscato Decl. Ex.4.)

31

As Prof. Su explains, a Taiwan Court would consider various facts and circumstances to determine how to allocate the spousal share among multiple wives. (See Su Decl. ¶¶ 76-80.) (The DNJ Court noted that, "If [PC Lee] and Y.C. were married, Yueh-Lan would not be entitled to half of the marital estate, as she contends." Shu, 2016 U.S. Dist. LEXIS 143222, at *7-8, n.7.) But any judgment rendered in PC Lee's absence on the premise that Yueh-Lan is the sole spouse entitled to the entire spousal share unavoidably would "impair or impede" PC Lee's ability to protect her spousal rights.  Rule 19(a)(1)(A)(i).  See, e.g., Brown v. Christman, 126 F.2d 625, 631 n.23 (D.C. Cir. 1942).  Additionally, PC Lee's interest in marital property is "conflicting and mutually exclusive" with the Executors' claim that Yueh-Lan alone is entitled to the entire spousal share.  Wach v. Byrne, Goldenberg & Hamilton, PLLC, 910 F. Supp. 2d 162, 169 (D.D.C.2012); id. ("[C]ourts in this Circuit typically require joinder of an absent party where the claims of a party and the absent party to a common fund or asset are conflicting and mutually exclusive.")

Also, although not binding, the Executors likely would cite any ruling on the basis that Yueh-Lan was the sole wife favorably in the future, further necessitating PC Lee's joinder now. See Gilliand v. Koch Trucking, Inc., No. JFM 11-3073, 2015 WL 2395148, at *4 (D. Md. May 19, 2015) (absentee necessary where it "bore the brunt of plaintiffs' allegations [in prior complaint] as the party whose actions allegedly violated the plaintiffs' rights" and "plaintiffs would likely cite any rulings favorable to their position as persuasive authority in a later proceeding"); VFS US LLC v. Vaczilla Trucking LLC, No. 15-02226, 2015 WL 7281619, at *15 (E.D. La. Nov. 16, 2015).  This is an especially acute concern here given that the Executors acknowledge that litigation in Taiwan over PC Lee's spousal rights would follow if they are awarded a judgment now "for return of all of the property" in PC Lee's absence.  (Br. at 25-26.)

32

Also, or alternatively, joinder of PC Lee is required under Rule 19(a)(1)(B)(ii) because any judgment to Yueh-Lan for the full spousal share in PC Lee's absence would subject the existing Defendants to the "'substantial risk of incurring double, multiple, or otherwise inconsistent obligations.'" Wach, 910 F. Supp 2d at 171 (citation omitted).  PC Lee would not be bound by such a judgment and could seek to recover against, and to the prejudice of, Defendants for her portion of the spousal share paid to Yueh-Lan. Cf. Fortuin v. Milhorat, 683 F. Supp. 1, 4 (D.D.C. 1988) (where two people claimed title to a house, a judgment in the absence of one "might well prejudice all" given that the absentee might obtain a later "inconsistent" judgment).

The Executors argue there is no such risk because PC Lee has "never claimed an interest in the property at issue," and that she "could have sought to intervene in this case" but did not (and is now time-barred). (Br. at 23.)  But the Executors cite nothing for their claims that an absent person cannot be "required" under Rule 19 if that person did not first seek to intervene. Rule 19(a)(1)(B) requires that an absent party "claims an interest" that would be impaired in its absence (or would subject existing parties to multiple or inconsistent obligations) that is not "'patently frivolous.'" Wach, 910 F. Supp. 2d at 170 (citation omitted); Davis v. U.S., 192 F.3d 951, 958-59 (10th Cir. 1999) ("Rule 19, by its plain language, does not require the absent party to actually possess an interest; it only requires the movant to show that the absent party 'claims an interest relating to the subject of the action.'") (citation omitted).  Resolving the viability of such a clamed interest at this stage would be "untenable, as it would effectively render the Rule 19 analysis an adjudication on the merits." Wach, 910 F. Supp. 2d at 170.  Thus, the Executors' argument that PC Lee cannot be necessary because she "is not a wife" and "sat on her alleged claim to be a spouse and any rights that might flow" therefrom is without support.  (Br. at 24.)

Though PC Lee is required to be joined under Rule 19(a)(1)(B)(i) and/or (ii), her joinder plainly is not feasible since when this action was commenced she was "stateless" as a dual American-Taiwanese citizen domiciled in Taiwan (Muscat Decl. Ex. 3 ¶¶ 24-29), which is fatal for diversity purposes. See, e.g., Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 828-29 (1989). Therefore, the analysis next moves to determine whether it would be inequitable to proceed without PC Lee.

Rule 19(b)(1) "'overlaps considerably'" with the "prejudice" that renders PC Lee a required party under Rule 19(a) in the first place. Capitol Med., 677 F. Supp. 2d at 194 n.9 (citation omitted). Second, the Executors' novel proposal that the Court could protect PC Lee's "theoretical interest" by crafting an order that places "all or a portion of" any award "in trust under the court's supervision and jurisdiction," while PC Lee and the Executors litigate "in Taiwan or anywhere else" the issue of "P.C. Lee's spousal status" (Br. at 26), is wholly inadequate and inconsistent with Rule 19(b). Though Rule 19(b)(2) provides the ability to craft a "protective" judgment, Rule 19(b)(3) requires the court to consider the adequacy of any such judgment in the required person's absence. Adequacy, in this sense, "refers to the 'public stake in settling disputes by wholes, whenever possible.'" Republic of Philippines v. Pimentel, 553 U.S. 851, 870 (2008) (citation omitted). The Executors' proposal is completely inadequate and defies common sense as it actually recognizes the likelihood that PC Lee would sue in Taiwan to establish her rights and affirmatively encourages this Court to proceed in a piecemeal fashion and to defer to findings a Taiwan court would make before finalizing a judgment. See St. Pierre v. Norton, 498 F. Supp. 2d 214, 221 (D.D.C. 2007) (adequacy factor weighed in favor of dismissal where the absent party "would likely file its own suit to enforce its right").

34

Finally, while the Executors argue they would be "forever precluded" from pursuing their claims if the action is dismissed for non-joinder because the statute of limitations "have long since passed" (Br. at 26), that is a problem of their own making.  Winston chose to sue only in federal court in 2010 as the expiration of the limitations period approached.  Any adverse consequences from a jurisdictional dismissal now should not fall on Defendants.  See Cloverleaf, 699 F.2d at 1279 ("If the limitation period has run during the pendency of this appeal, the time bar is attributable to [plaintiff's] lapse . . . ."; Wichita & Affiliated Tribes of Okla. v. Hodel, 788 F.2d 765, 774 (D.C. Cir. 1986); Pimentel, 553 U.S. at 872 ("Dismissal under Rule 19(b) will mean, in some instances, that plaintiffs will be left without a forum for definitive resolution of their claims.").

## B.      The Grantors Are Indispensable And Required to Be Joined

The Grantors also are required, as the alleged owners of shares that were transferred to NM-US Trust.  (PSAC ¶¶ 40, 43, 50.)  (Defendants are not arguing that the Grantors are necessary as beneficiaries of NM-US Trust (See Br. at 21-22.))  It is alleged that "[a]lthough [the Grantors] may have been the legal owner[s] of these shares, "Y.C. was the beneficial owner." (Id. ¶¶ 40, 43.)  The Executors claim these transfers "were unlawful and should be clawed back," or alternatively the shares should be "turned over" to them.  (Id. ¶ 56.)

On these allegations, Rule 19 necessitates dismissal.  First, as the alleged legal owners immediately before the transfers, each Grantor has an interest in having its shares returned to it.  Thus, the Executors' claim that the transfers should be "clawed back" or the shares "turned over" to them, is "conflicting" and "mutually exclusive" with the Grantors' legal ownership interests and proceeding in their absence "would undoubtedly" impair or impede their ability to protect that legal interest, Wach, 910 F. Supp. 2d at 169; Fed. R. Civ. P. 19(a)(1)(B)(i), regardless of whether YC was the "beneficial owner." See Draisner v. Liss Realty Co., 228 F.2d 48, 49 (D.C.

35

Cir. 1955) ("Even if Raffel holds only a legal title he is at least a necessary party to proceedings in which his title is affected."); U.S. v. Annis, 634 F.2d 1270, 1273 (10th Cir. 1980).

Second, under Rule 19(a)(1)(B)(ii) litigating in the Grantors' absence risks subjecting the existing Defendants to multiple liabilities, because if, as is sought, the Executors obtain an order "compelling" "the return" of the shares (PSAC at 33 ¶ (C)), then Defendants would be subject to the "risk – if not the certainty – of a subsequent claim" by the Grantors, "to the same [assets] and thus to the possibility of multiple inconsistent liabilities." Wach, 910 F. Supp 2d at 172; cf. Fortuin, 683 F. Supp. at 4 (judgment in the absence of one claimed titleholder to a house might "prejudice all involved" given likelihood absentee could obtain a later, "inconsistent" judgment).

As BVI companies (PSAC ¶ 48), the Grantors are British citizens whose joinder is not feasible, see JPMorgan Chase Bank v. Traffic Stream (BVI) Infra. Ltd., 536 U.S. 88, 99 (2002), and their joinder would cause aliens to be on both sides of the litigation. Grupo Dataflux v. Atlas Global Grp., L.P., 541 U.S. 567, 569 (2004); Saadeh v. Farouki, 107 F.3d 52 (D.C. Cir. 1997).

Finally, it would be inequitable to proceed in the Grantors' absence since their interests would be prejudiced (as would those of the existing Defendants) for the reasons stated above. See Wach, 910 F. Supp. 2d at 169. It would also be difficult to fashion an adequate judgment lessening any prejudice. See, e.g., Nat'l Coal Ass'n v. Clark, 603 F. Supp. 668, 673 (D.D.C. 1984) ("None of the parties has suggested, nor has the Court itself divined, a satisfactory means by which [any prejudice] could be resolved or even mitigated by a careful shaping of any judgment or relief."). Any judgment carving out the shares would be hollow and lead to piecemeal litigation. Thus, going forward "without the [Grantors] would not further the public interest in settling the dispute by wholes." Pimentel, 553 U.S. at 870-71. And, as noted above, the statutes of limitation having expired, is a problem of Winston's making.

## V.   THIS ACTION SHOULD BE DISMISSED BASED ON *FORUM NON CONVENIENS*

Dismissal under FNC "is committed to the sound discretion of the trial court," Piper

Aircraft Co. v. Reyno, 454 U.S. 235, 257 (1981)), and "can be made at any time." Stromberg v.

Marriot Intern., Inc., 474 F. Supp. 2d 57, 60 (D.D.C. 2007) ("Stromberg I") (citation omitted).

As noted above, the DNJ Court dismissed the substantively identical DNJ Action on FNC

grounds and, in so doing, denied the Executors' Motion to File a Second Amended Complaint as

moot.  (DNJ DE 121.)  As noted above, Defendants have prepared for the Court's convenience a

comparison of the two pleadings (Muscato Decl. Ex. 2) which shows that, other than the

defendants named, they are virtually identical.  The DNJ Defendants were alleged to be

domiciled in New Jersey (DNJ DE 18 ¶¶ 14-20), and here, Defendants are alleged to have their

"principal place[s] of business" in DC.  (PSAC ¶¶ 19-21.)

While it is true that Clearbridge is a DC LLC, it has delegated its responsibilities as

trustee of NM-US Trust to Trust Managers, all of whom are located in Taiwan.  (Kozusko Decl.

¶ 7; Wong Decl. ¶ 7.)  In any event, the fact that defendants are subject to personal jurisdiction,

is not determinative of a FNC analysis.  See Shu, U.S. Dist LEXIS 143222, at *27-51; Stromberg

v. Marriott Int'l, Inc., 256 F. App'x 359, 360 (D.C. Cir. 2007) ("Stromberg II") (dismissing in

favor of Mexican forum even though defendants were headquartered in DC); Ott v. Kaiser-

Georgetown Cmty. Health Plan, Inc., 689 F. Supp. 9, 12 (D.D.C. 1988) (dismissing in favor of

Maryland even though defendant was incorporated in DC where, case had "no connection with

the fact of [defendant's] incorporation"); Franklin v. Southern Ry. Co., 523 F. Supp. 521, 524

(D.D.C.1981) ("plaintiffs' choice of forum . . . is not determinative in view of the overall balance

of convenience to the parties, especially when the forum chosen is only the statutory home state

of the defendant.").

In assessing the recognized FNC factors, "the threshold inquiry is whether there is an adequate alternative forum where the plaintiff may bring his claims." BPA Int'l Inc. v. Kingdom of Sweden, 281 F. Supp. 2d 73, 85 (D.D.C.2003) (citing Piper, 454 U.S. at 257).  Any presumption in favor of the initial forum "applies with less than maximum force when the real parties in interest are foreign."  In re Disaster at Riyadh Airport, Saudi Arabia, on Aug. 19, 1980, 540 F. Supp. 1141, 1144 (D.D.C. 1982); see also BPA, 281 F. Supp. 2d at 85 ("this factor carries much less weight when the plaintiff is also a stranger to the forum.").  Winston, Yueh-Lan and the Executors are all from Taiwan.  Here, there clearly is an adequate alternative forum, Taiwan, as the DNJ Court already found.  Shu, 2016 U.S. Dist. LEXIS 143222, at *34 (these same Executors "are able to bring suit in Taiwan against the [. . .] Defendants to obtain relief for the alleged improper transfers" and "[c]onsequently, Taiwan is an adequate alternative forum").  See also Moletech Global Hong Kong Ltd. v. Pojery Trading Co., No. 4:09-CV-00027-SBA, 2009 WL 3151147, at *4,*8 (N.D. Cal. Sept. 25, 2009); In re Air Crash Over Taiwan Straits on May 25, 2002, 331 F. Supp. 2d 1176, 1181-88 (C.D. Cal. 2004); cf. Donahue v. Far Eastern Air Transport Corp., 652 F.2d 1032, 1038, 1039 n.12 (D.C. Cir. 1981) (noting that "the natural forum for the litigation, Taiwan, is open to plaintiffs," and that, even absent dismissal on Rule 12(b)(6) grounds, the action "might be vulnerable to dismissal on [FNC] grounds").  Also, as in the DNJ Action, the Defendants' agreement that they are "amenable to process" in Taiwan (see Kozusko Decl. ¶12; Wang Decl. ¶ 2; Wong Decl. ¶ 8), confirms it is an available forum. Shu, 2016 U.S. Dist. LEXIS 143222, at *28.

Given that Taiwan is an adequate alternative forum, the FNC inquiry moves to whether, on a balance of the public and private interest factors, the case should be dismissed in that forum's favor.  The private interest factors to be considered include: (i) the relative ease of access

to sources of proof, (ii) availability of compulsory process for attendance of unwilling witnesses, (iii) the cost of obtaining attendance of willing witnesses, and (iv) all other practical problems that make trial of a case easy expeditious, and inexpensive. BPA, 281 F. Supp. 2d at 85; In re Disaster, 540 F. Supp. at 1145-46 (citing Piper, 454 U.S. 241 n.6). Here, as in the DNJ Action, these factors support dismissal in favor of a Taiwan forum. See Shu, 2016 U.S. Dist. LEXIS 143222, at *46-47. The evaluation of the ease of access to proofs factor begins "with an understanding of the various theories which the parties may seek to prove at the trial of these cases." In re Disaster, 540 F. Supp. at 1146. The Executors are Taiwanese citizens, asserting Taiwan law claims on behalf of a Taiwan decedent (Yueh-Lan), concerning a "Marital Estate" arising under Taiwan law from a marriage of Taiwan citizens. As the Executors themselves put it: the "core" of their case is whether Yueh-Lan was shorted on her statutory spousal interest giving rise to claims under Taiwan law, principally Articles 1030-1 and 1030-3. (Br. at 16-17.) That core claim involves an examination of conduct that took place in Taiwan, including whether the property at issue was marital property, whether marital property was transferred by or at the request of YC to the Trusts specifically to deprive Yueh-Lan of her spousal share, what her rights were to a spousal share given the status of YC's other wives at the time of the termination of the Taiwanese marital property regime, whether the property transferred is exempt from being counted back into the remainder because it was transferred for purposes of "performing a moral obligation" as that phrase is understood under Taiwan law, among other matters. The evidence needed to assess those factual matters will involve witnesses and documents concerning, among other things: (i) the marriages of YC to Yueh-Lan, Yang Chiao and PC Lee and the relative contributions made by each of them during their marriages in order to assess how to divide the spousal share among them (Su Decl. ¶¶ 76 to 80); (ii) the growth of FPG in parallel to the three

39

marriages; (iii) YC's alleged involvement in establishing various foreign (Liberian and BVI) entities that owned the FPC USA and Inteplast shares that allegedly were transferred to NM-US Trust in order to defeat Yueh-Lan's spousal share; (iv) the assertion that YC held a beneficial interest in the property transferred to the Bermuda Trusts such that it should be counted in connection with establishing the value of the spousal share; (v) the meaning and effect of the Settlement Agreement and the distribution of YC's marital and inheritable property to his 12 Taiwanese heirs, including PC Lee; (vi) whether the Executors are barred from bringing spousal share claims on behalf of Yueh-Lan in light of the Settlement Agreement; (vii) operation of NM-US Trust by its trust managers each of whom is located in Taiwan; and (viii) the execution of the POA. The sources of proof on these key issues, including the relevant witnesses and documents, are predominantly located in Taiwan and elsewhere in the world.

However, "Taiwan . . . law makes it difficult to gather evidence for use in a trial in a foreign country because Taiwan is not a party to the Convention on the Taking of Evidence Abroad in Civil or Commercial Matters." Chang v. Baxter Healthcare Corp., 599 F.3d 728, 735 (7th Cir. 2010); see also Lee Yu-Ge v. Johnson & Johnson, No. 3:10 oe 40034, 2011 WL 3566859, at *3 (N.D. Ohio Aug. 12, 2011). The Court likely will be unable to compel the attendance of the many non-party witnesses or the production of relevant documents located in Taiwan, and, in any event, in a Taiwan proceeding the associated costs would be significantly lower. See Moletech, 2009 WL 3151147, at *7-8; Lee Yu-Ge, 2011 WL 3566859, at *3.

Litigating this case in DC is made more cumbersome based upon the difficulties and expenses involved in necessarily having the many Chinese language documents that will be at issue in this case translated into English in a form agreeable to the parties. See Compania Naviera Joanna SA v. Koninklijke Boskalis Westminster NV, 569 F.3d 189, 201 (4th Cir. 2009);

40

Warner Tech. & Inv. Corp. v. Hou, No. 13-741, 2014 WL 7409978, at \*5 (D.N.J. Dec. 31,

2014). Many of the witnesses would also give written or oral evidence in Taiwanese or

Mandarin Chinese, including but not limited to PC Lee, and witnesses concerning the Settlement

Agreement, the contributions of the wives, the division between the wives of the spousal share,

among others. The costs of the litigation will be significantly lower in Taiwan by eliminating the

need for interpreters or the translation of Chinese or Taiwanese language documents. Indeed,

Plaintiffs themselves would be less burdened pursuing the present action in Taiwan as Taiwanese

citizens residing in Taiwan who are familiar with its court system.

    The public interest factors also favor dismissal. These factors, which include: (i) any

unnecessary burdens associated with trying these cases in a particular forum, such as docket

congestion, court administrative difficulties and the burden of jury duty; (ii) the local and/or

general national interest in using a particular forum; and (iii) each forum's familiarity with the

governing law in the case so that unnecessary conflict of laws and application of foreign law

problems can be avoided, "attest to whether the suit is 'unnecessarily burdensome' on the court,

Piper, 454 U.S. at 256 . . ., or the residents of the community in which the suit is brought, and

whether the community where the action leading to the suit actually took place has an interest in

the litigation." BPA, 281 F. Supp. 2d at 85-86. As found in the related DNJ Action, continued

prosecution of this Taiwan law-based action here in DC would likewise be "unnecessarily

burdensome" upon the District, which has little interest in facilitating what effectively amounts a

Taiwan family law or probate action. See Shu, 2016 U.S. Dist. LEXIS 143222, at \*42-46.

    In evaluating the public interest factors, the Court must consider the locus of the alleged

culpable conduct and the connection of that conduct to the chosen forum. See Stromberg II, 256

F. App'x at 360. Here, the tenuous connections of Clearbridge and NM-US Trust (which the

Executors have otherwise said cannot be sued) based only upon a defendant's formal affiliation with the District of Columbia "are not sufficient to cause [the District] to be the appropriate forum in which to maintain this action." Ott, 689 F. Supp. at 12; see also Franklin, 523 F. Supp. at 524; Pitt v. Woodward and Lothrop, 327 A.2d 816, 817 (D.C. 1974).

The PSAC does not allege that the alleged injury occurred in DC. None of the alleged transfers to the "Trusts" complained of are claimed to have occurred in DC.[10] Moreover, if any injury occurred to Yueh-Lan it occurred in Taiwan, where Yueh-Lan, a lifelong resident and citizen of Taiwan, was purportedly denied certain spousal rights to a portion of the Taiwan "Marital Estate."

Finally, while obviously capable of determining foreign law issues, this Court has recognized that where foreign laws are likely to apply, the foreign jurisdiction is better suited to apply its own laws and this Court "is sensitive to the desirability of avoiding the unnecessary review of foreign disputes." Stromberg I, 474 F. Supp. 2d at 63; see also Irwin v. World Wildlife Fund, Inc., 448 F. Supp. 2d 29, 36 (D.D.C. 2006) (". . . Gabon is in the best position to interpret and apply its own law.") The desire to match the "forum governing the law" was a driving factor in the DNJ Court's analysis as well. Shu, U.S. Dist LEXIS 143222, at *42-43. The gravamen of this action is based on or dependent upon provisions of the Taiwan Civil Code. Other federal courts have found that this presents an arduous task warranting a FNC dismissal. See, e.g., id. at *44; Moletech, 2009 WL 3151147, at *6 (applying Taiwanese law "would be an arduous task as the Court is unfamiliar with Taiwanese law" weighing "heavily in favor of dismissal."). Finally, dismissal is especially appropriate because this case involves foreign issues of family and estate

---

[10]   The Executors have not filed a copy of their appointment and an authenticated copy of Yueh-Lan's will in accordance with DC Code § 20-341(b) suggesting that no property of Yueh-Lan's estate is "located in the District of Columbia."

law, areas from which federal courts traditionally abstain. See Moore v. Sims, 442 U.S. 415, 435 (1979).

## VI.   ADDITIONAL GROUNDS FOR DISMISSAL AS TO NMF AND NM-US TRUST

### A.   NMF Has Not Been Properly Served

The Executors have failed to carry their burden "of proving the validity of service [once] challenged." Whitehead v. CBS/Viacom, Inc., 221 F.R.D. 1, 2 (D.D.C.2004). And absent proper service, the Court lacks the power to assert personal jurisdiction over NMF, even if there are otherwise sufficient contacts to do so. See Gorman v. Ameritrade Holding Corp., 293 F.3d 506, 514 (D.C. Cir. 2002).

The Executors argue service was proper under Fed. R. Civ. P. 4(e)(1) and 4(h)(1)(A) because they complied with the DC Code's provision for service on foreign corporations. (Br. at 26-27.) That is incorrect. DC Code § 13-334(a) allows service to be made "on the agent of the corporation or person conducting its business, or, when he is absent and cannot be found, by leaving a copy at the principal place of business in the District." Winston's process server initially attempted to serve NMF by delivering process to "John C. Wannen R/A." (Weinberger Decl. Ex. M.) But Mr. Wannen is not an agent of NMF. The Executors concede he is merely "a member of the accounting firm . . . that prepares NMF's tax returns" and a "member of Defendant Clearbridge." (Br. at 27.) Likewise, leaving a copy of the papers at NMF's place of business was insufficient. Even if "[n]one of NMF's officers appear to be residents of the District" (id. at 27), that does not mean NMF's *agent* and/or *person conducting* NMF's business was absent and unable to be found.

The Executors' request for an extension of time is also unavailing. The Executors have not met their burden of showing good cause. Whitehead, 221 F.R.D. at 2-3. "Rule 4(h) requires that plaintiff use due diligence" in order "to determine the proper agent and to conform to the

43

requirements of the rule." Id. at 3 (refusing to extend time under Rule 4(m)). Where "a process server serves a purported corporate defendant, plaintiff also bears the burden of showing that the recipient was authorized to accept process, or that the process server had cause to believe that the party was authorized." Id. Mr. Wannen was not so authorized (Muscato Decl. Ex. 12), and Winston's process server had no reason to believe otherwise. Mr. Wannen's supposed "failure to disavow authority," especially if he "was never asked if [he] held such authority," is not a representation of authority. Williams v. GEICO Corp., 792 F. Supp. 2d 58, 66 (D.D.C.2011). The process server appears to have done nothing to confirm his (mistaken) belief. Id.

The request for a discretionary extension is also without support. The existence, or potential existence, of a time bar does not automatically warrant a discretionary extension. Mann v. Castiel, 729 F. Supp. 2d 191, 198 (D.D.C.2010) ( aff'd, 681 F.3d 369 (D.C. Cir. 2012); Colston v. First Guar. Commercial Mortg. Corp., 665 F. Supp. 2d 5, 10 (D.D.C.2009). As the authority cited by the Executors recognizes, "actual knowledge of a lawsuit is no substitute for proper service." Shaw v. District of Columbia, No. 05-1284 (CKK), 2006 WL 1371681, at *17-18 (D.D.C. May 15, 2006). Here, a discretionary extension is unwarranted where the failure to timely serve was caused by Winston's decision to wait for almost 120 days to first attempt serving NMF and not by any conduct of NMF.

**B.    The PSAC Fails to State a Claim Against NMF**

The only allegations specifically directed to NMF are that NMF received "gratuitous distributions" of cash from NM-US Trust that were "authorized and/or directed" by Clearbridge. (PSAC ¶ 57.) For all the reasons stated above, such allegations do not state a claim against NMF. And allegations that simply lump NMF together with the other "Defendants" are insufficient for pleading purposes. See Toumazou v. Turkish Republic of N. Cyprus, 71 F. Supp. 3d 7, 21 (D.D.C. 2014) ("Generally, a plaintiff cannot satisfy the minimum pleading

44

requirements under [FRCP 8] by 'lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct.' . . . Instead, a plaintiff must provide each defendant with 'fair notice of each claim and its basis.'" (citation omitted)).

## C.   The Executors Are Judicially Estopped from Suing NM-US Trust

Under established principles of judicial estoppel, the Executors' claims against NM-US Trust should be dismissed. Robinson v. District of Columbia, 10 F. Supp. 3d 181, 185 (D.D.C. 2014) (granting motion to dismiss) (citing Moses v. Howard Univ. Hosp., 606 F.3d 789, 798 (D.C. Cir. 2010). Here, the Executors successfully argued before the DC Circuit that NM-US Trust was a "traditional trust" that could not sue or be sued, and a nominal party which should be dismissed. (See Muscato Decl. Ex. 6 at 7, 10, 34; Appellants' Br. at 28, 34, 44 (DC Appeal Doc. # 1609480); Wang, 843 F.3d at 495.) Yet the PSAC continues to name and seek relief against NM-US Trust and the Executors continue to seek to bring this action in DC, based on NM-US Trust's alleged connections with the forum. (PSAC ¶58.)

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Motion for Leave to Amend and For Other Relief should be denied and the action be dismissed with prejudice.

Dated:  May 5, 2017                                  Respectfully submitted,

|  |  |
|---|---|
|  | /s/  David Leland |
| John L. Gardiner (admitted *pro hac vice* ) | David B. Leland |
| Andrew Muscato (admitted *pro hac vice*) | DC Bar Number 484096 |
| SKADDEN, ARPS, SLATE, MEAGHER & | SKADDEN, ARPS, SLATE, MEAGHER & |
| FLOM LLP | FLOM LLP |
| Four Times Square | 1440 New York Avenue, N.W. |
| New York, NY 10036-6522 | Washington, DC 20005-2111 |
| (212) 735-3000 | (202) 371-7713 |
| (212) 735-2000 (fax) | (202) 661-8257 (fax) |
| john.gardiner@skadden.com | david.leland@skadden.com |
| andrew.muscato@skadden.com |  |

*Attorneys for New Mighty U.S. Trust, New Mighty Foundation, and Clearbridge LLC*

45

## CERTIFICATE OF SERVICE

I hereby certify that on May 5, 2017, the foregoing Memorandum of Points and Authorities in Support of Defendants' Opposition to the Motion for Leave to File Second Amended Complaint and For Other Relief Motion and attachments thereto and documents submitted in support thereof will be filed with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to the following:

Daniel S. Weinberger
GIBBONS P.C.
One Pennsylvania Plaza, 37th Floor
New York, NY 10119
T: (212) 613-2063
F: (212) 290-2018
dweinberger@gibbonslaw.com

-and-

Michael R. Griffinger
GIBBONS P.C.
One Gateway Center
Newark, NJ 07102
T: (973) 596-4500
F: (973) 639-6294
mgriffinger@gibbonslaw.com

*Attorneys for Chin-Teh Hsu, Tong-Schung Tai and Robert Shi, as joint executors of the will of Yueh-Lan Wang*

Dated: May 5, 2017

/s/ David Leland
David B. Leland
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005-2111
(202) 371-7713
(202) 661-8257 (fax)
david.leland@skadden.com

*Attorneys for New Mighty U.S. Trust, New Mighty Foundation, and Clearbridge LLC*